## Robson v. Martin et al., Appellants.

*Workmen's compensation—Master and servant—Independent contractor—Hiring truck with driver.*

1. While one may be in the general employ of another, yet he may, with respect to particular work, be transferred to the service of a third person, in such a way that he becomes, for the time being, the servant of that person with all the legal consequences of that relation.

2. Where a farmer, not engaged in the business of truckage, hires out a truck with a driver to a contractor for construction work, and the contractor has entire control and direction as to what the driver is to do with the truck, and may end the arrangement at any time, the driver is, in such work, an employee of the contractor, although he may be paid his wages by the owner of the truck.

3. If, in such case, the driver is killed at a grade crossing by a train, the contractor is liable for the compensation, under the Workmen's Compensation Act.

Argued November 28, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 283, Jan. T., 1927, by defendants, from judgment of C. P. Luzerne Co., Jan. T., 1927, No. 301, affirming decision of workmen's compensation board allowing claim, in case of Theresa Robson v. W. Robinson Martin and Globe Indemnity Co. of Newark, N. J. Affirmed.

Appeal from decision of workmen's compensation board allowing claim. Before FULLER, P. J.

The opinion of the Supreme Court states the facts.

Decision affirmed. Defendants appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*Frank P. Slattery,* for appellant.—Thomas Robson, the deceased, was not an employee of W. Robinson Martin, the defendant: Simonton v. Morton, 275 Pa. 562; Colleoni v. D. & H. Co., 274 Pa. 319; Tarr v. Coal & Coke Co., 265 Pa. 519; Gurski v. Coal Co., 262 Pa. 1; Callihan v. Montgomery, 272 Pa. 56; Lecker v. Valentine, 286 Pa. 418.

*W. L. Pace,* for appellee, cited: Tarr v. Coal & Coke Co., 265 Pa. 519; McCall v. Telephone Co., 79 Pa. Superior Ct. 505; Kelley v. R. R., 270 Pa. 426; Lecker v. Valentine, 286 Pa. 418; Byrne v. Hitner, 290 Pa. 225; Flaherty v. Trout, 290 Pa. 315.

OPINION BY MR. JUSTICE SADLER, January 3, 1928:

Martin, a codefendant with the Globe Indemnity Company, his compensation insurance carrier, was a

subcontractor under another, and engaged in filling and leveling a lot of ground, so that it could be made available for the construction of a coal storage yard. It was necessary, under his agreement, to haul cinder and culm used in grading for a mile along a highway which crossed the tracks of a railroad. He hired several automobile trucks for this purpose, including one from Martinelli. The latter furnished his machine with a driver, employed by him, receiving in compensation $2.50 an hour for the time it was in service, which sum included the pay of the chauffeur, Robson. While engaged in transporting the material, the truck was hit at the railroad crossing and Robson killed, and, for the loss sustained, his dependents made claim. The referee found the decedent was an employee of Martin at the time of the accident, engaged in the furtherance of his business, and directed that he make payment. This action was approved by the compensation board and the court of common pleas, and, from the judgment entered, this appeal was taken, the defendants contending that, in legal contemplation, the master in the present case was Martinelli, who hired Robson and paid his wages, and to him alone can the dependents look for compensation.

The single question presented is whether the driver was, at the time the injuries were received, the servant of Martin, or of the owner of the rented truck. This requires us to consider the testimony upon which the finding of the referee and the compensation board is based. If supported by competent evidence, the conclusions reached are controlling on us in passing upon the responsibility of the defendants: Slemba v. Hamilton & Sons, 290 Pa. 267. The record discloses that Martin asked Martinelli, a farmer, not engaged in a general truckage business, to let his vehicle for moving material, and furnish it with a driver, whom he should secure and pay. Martinelli had no contract to do any particular work, and was at no time on the ground

where it was in progress, nor was he represented there by any agent. Though knowing of the general character of service to be performed, he had no power to direct what hauling should be done, or the manner of transporting the culm and ashes. Martin was in sole charge of the undertaking, and the driver acted under his directions, or those of his foreman. He testified Martinelli "had no authority over the truck; when it was rented out to us, it was rented with the understanding they were to do as we told them," and this declaration was frequently reiterated by him, as shown by the evidence. The hiring was not for any definite period, and Martin could discharge the truck and driver from service at any time. No one but defendant or his foreman had any authority over Robson, or the truck, while engaged in the work. In view of the undisputed testimony of both Martin and Martinelli, the referee was justified in finding that, at the time of the accident, the driver was an employee of the defendant, and engaged in the furtherance of his business, though hired and paid by the owner of the truck.

Had Martinelli been an independent contractor, then responsibility for injuries to his employee would arise: Colleoni v. D. & H. Co., 274 Pa. 319; Kelley v. P. R. T. Co., 270 Pa. 426; Smith v. State Workmen's Ins. Fund, 262 Pa. 286. In determining whether he bore this relation, it will be noted that he was not engaged generally in the business of truckage, but hired his machine to Martin. There was no agreement that he should accomplish a definite task of moving ashes from one point to another, with the means and manner of accomplishing the result under his control. The question to be answered has been thus stated: "Was the act done in a business in which the master is in control as a proprietor, so that he can at any time stop or continue it, and determine the way in which it shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result, com-

prehending not only the general business which the act is intended to promote, but the particular business which calls for the act in the smallest subdivision that can be made of the business in reference to control and proprietorship?": Byrne v. Hitner's Sons Co., 290 Pa. 225, 230.

The relation of independent contractor may exist though the contractee exercises limited control, where the reserved power to direct does "not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract": Simonton v. Morton, 275 Pa. 562. It was under circumstances showing such facts that the referee found, and the court approved, that one, who agreed with a city to furnish trucks and men to clean snow in emergency from city streets, was an independent contractor, notwithstanding the hirer regulated the manner of doing the work, when it also gave to the former the right to accomplish the task in his own way so long as the general result was obtained, he having the power to hire, discharge and completely control his own men while performing the service: Brooks v. Buckley & Banks, 291 Pa. 1. In the present case, however, Martin had not only complete supervision of the work to be accomplished, but also the manner of performing it, which was entirely under his direction. That Robson was paid his wages by Martinelli, who in turn received reimbursement through the payment of a lump sum agreed on for the use of both truck and driver, does not alter the conclusion that Martin was in control: Sgattone v. Gotwals, 290 Pa. 341; Atherholt v. Stoddart Co., 286 Pa. 278.

Though not an independent contractor, yet Martinelli was the employer of Robson, and let his automobile and the chauffeur to Martin for use. It is a well recognized rule that, where one may be in the general employ of another, yet he may, with respect to particular work, be transferred to the service of a third person,

in such a way that he becomes, for the time being, the servant of that person with all the legal consequences of that relation. "It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished": Standard Oil Co. v. Anderson, 212 U. S. 215. Thus, one may loan or hire his servant, generally employed, to another to perform for him some special labor, and while so engaged the latter is obligated as master: Tarr v. Hecla Coal & Coke Co., 265 Pa. 519; Sgattone v. Gotwals, supra. And this is likewise true where the loaning or letting is of a team driven by an employee selected by the owner: Flaharty v. Trout, 290 Pa. 315; Lecker v. Valentine, 286 Pa. 418; McCall v. Bell Telephone Co., 79 Pa. Superior Ct. 505; P. & R. C. & I. Co. v. Barrie, 179 Fed. 50.

In such cases consideration must be given to the character of the service to be rendered in determining whether the one employed becomes temporarily the servant of another. If there has been an engagement to supply some specified work, control in the manner of performing it being reserved, the hirer merely giving general directions as to the result to be reached, the original employer still remains the master of the servant who is under his supervision and carries out his orders. This is illustrated by the so-called "carriage cases," where the letting is of a vehicle and driver to transport to a particular destination, but the owner of the conveyance controls it and the operator supplied. As a result, he remains liable as a master whose business is being furthered (Puhlman v. Excelsior Cab Co., 259 Pa. 393; Funston v. Ingenito, 282 Pa. 124; Wallace v. Keystone Auto Co., 239 Pa. 110; Gresh v. Wanamak-

er, 221 Pa. 28), and is responsible for the negligent conduct of his servant: Thatcher v. Pierce, 281 Pa. 16; Crouse v. Lubin, 260 Pa. 329. When the accident occurs in the course of such an employment the bailee is not answerable for the negligence of the driver, unless he has in some manner assumed control, or interfered with the way in which the vehicle is operated: Connor v. McCandless, 84 Pa. Superior Ct. 307; Matlack v. Chalfant, 69 Pa. Superior Ct. 49; Wollaston v. Park, 47 Pa. Superior Ct. 90.

Where, however, the letting of the vehicle and driver is intended not merely to secure the performance of some act of which the control of performance remains in the bailor, but this power of supervision and direction has been transferred to the one who hires, and who thereafter manages it during the period of hiring, the latter becomes responsible as master: Puhlman v. Excelsior Cab Co., supra. The test is whether the truck and driver are engaged to work for the hirer on the undertaking during the course of which the accident occurs, and remains subject to his direction and control independent of the original employer. If so, the temporary hirer becomes the master as to the one who is for the time being his servant, and assumes the attendant responsibility. On the other hand, if it appears that the owner of the truck is engaged to execute certain work, proceeding in his own way, merely effecting a directed result, the contrary is true. The facts in this case bring it within the first class mentioned, and Martin is therefore the one who must respond as the master of Robson.

We need not consider the question as to the responsibility of parties, bearing the relation here shown to have existed, where the accident resulted from a defect in the truck let, or the misconduct of the driver furnished in handling it, for the injury occurred as a result of the destruction of the vehicle and killing of the driver by a third party at a grade crossing. If the deceased

was the servant of the defendant at the time, as held by the referee, board and court, and with which conclusion we agree, then compensation was properly awarded. We see no reason for remitting the record for the taking of further testimony, as suggested by appellants.

The judgment is affirmed.