### FUNK v. HAWTHORNE et al.
#### No. 8390.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 22, 1943.
Decided Nov. 5, 1943.

David A. Saltzburg, of Philadelphia, Pa. (Morris W. Kolander, of Philadelphia, Pa., on the brief), for appellant.

Robert M. Bernstein, of Philadelphia, Pa. (Milford J. Meyer, of Philadelphia, Pa., on the brief), for appellee.

Before JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

Michael F. Funk employed as a foreman by the contracting firm of Buckley & Co., Inc., met his death on May 6, 1942, when he was struck by a truck owned by the defendant, Robert Hawthorne, and driven by one Bennett Wilson. The accident occurred in the city of Philadelphia. Plaintiff is the decedent's widow and administratrix of his estate. She sues to recover damages for the death under the provisions of the appropriate Pennsylvania statutes.

As the case comes to this Court, on appeal, only one question is presented. Was Bennett Wilson, who was driving the truck at the time the decedent was struck and killed by it, a servant of the defendant Hawthorne? If so, the judgment must stand. If not, and if at the time of the accident Wilson had become the servant of Buckley & Co., Inc., the action in tort will not lie, and the only recovery is for compensation under the Workmen's Compensation Act, 77 P.S. § 1 et seq., against Buckley. The jury, both by general verdict and special findings, found that Wilson was the servant of Hawthorne and not of Buckley at the time of the accident, and found in favor of the plaintiff, against Hawthorne and in favor of Buckley. The defendant contends that this verdict is not supported by the evidence and that, in spite of the verdict, the undisputed facts show that Wilson had become and was acting as the servant of Buckley at the time of the accident.

Most of the facts are not subject to dispute. It appears that Buckley was engaged in a piece of road building in Philadelphia. He had some trucks of his own on the job; he hired other trucks, with drivers, from Hawthorne. They were paid for by Buckley at a given rate per hour for truck and driver. The work, for which the truck was hired, consisted in driving the truck to be loaded under a power shovel, then driving it from the borrow pit to the appropriate place on the road which was being built and dumping the contents. If direction as to the appropriate place, of loading or dumping, was necessary, one of Buckley's men on the job would indicate where it was. At the close of each day's work Buckley would notify Hawthorne how many trucks would be needed the next day and for how many hours their services would probably be required. Hawthorne chose the drivers. Hawthorne had no part in the construction contract itself; his undertaking was limited to furnishing trucks and drivers for Buckley. This was a regular part of Hawthorne's business.

The relationship of master and servant is no doubt a legal concept, but its existence turns on the establishment of facts which vary from case to case. The same is true when the question is whether a servant who starts as the employee of one master has become the servant of a second master with regard to a given transaction. The defendant in this case urges that the test is who controlled the servant as to details of his conduct at the time of the transaction in question. To establish that Buckley, not Hawthorne, controlled Wilson, the driver at the time of the accident, Hawthorne

offered testimony of Andrew Hawthorne, son and supervising employee of defendant, who claimed, with what the jury might have found to be overeagerness, that, by express agreement with Buckley, when the trucks left the Hawthorne garage they were thereafter under the sole control of Buckley. On the other hand, Buckley, himself, denied any such arrangement or that he had any right to control the drivers of the hired trucks "in any way, shape or form." The jury having found in favor of Buckley and against Hawthorne, we must accept the former's version as true.

However, in looking to see whether there is justification for the jury's reaching the conclusion that the driver, Wilson, was Hawthorne's servant and not that of Buckley at the time of the accident, we may look at the other evidence which the jury had aside from what either party claimed the contract for hire of the trucks gave. Among the alleged facts brought out in the testimony which the jury had before it; and which we must assume it accepted are the following: Hawthorne was in the business of renting trucks together with drivers. This was his arrangement with Buckley. Hawthorne hired the drivers and had the power to discharge them or substitute them at any time on any job. If one was unsatisfactory to Buckley, he could complain to Hawthorne, but could not discharge him, only order him off the job for the day.[1] The drivers furnished by Hawthorne were paid by him and their social security taxes were deducted by him. The trucks were owned, garaged, fueled and repaired by Hawthorne. The job of operating the trucks, valued between $3000 and $4000, demanded skill and experience. The drivers handled the trucks so as to protect Hawthorne's proprietary interest in them.

All of these factors are said to bear upon the question and to indicate a continuance of the general employment, that is continuation of the employment by Hawthorne rather than the conclusion that the general servant has become the servant of another. 1 Restatement, Agency (1933) § 227, comments b and c.

■■ The case is in the Federal Court because of diversity of citizenship of the parties. The operative facts all occurred in Pennsylvania and the problem, so far as it is controlled by case law, is one to be settled in accordance with Pennsylvania decisions. Several of these have been cited to us by each side. The facts vary of course from case to case. However, the legal test applied in each is the same: who had the right of control not only with regard to the work done but also with regard to the manner of performing it? Venezia v. Philadelphia Electric Co., 1935, 317 Pa. 557, 177 A. 25; Robson v. Martin, 1928, 291 Pa. 426, 140 A. 339, and Healey v. Carey, Baxter & Kennedy, Inc., 1941, 144 Pa.Super. 500, 19 A.2d 852, are but a few of the many Pennsylvania decisions stating this proposition in varying phraseology. The individual factors which determine the ultimate conclusions are numerous. They are stated in 1 Restatement, Agency (1933) § 227, comment c, and § 220, and the Pennsylvania decisions are substantially in accord. See Restatement, Agency; Pa.Annot.(1936) §§ 227 and 220 and Healey v. Carey, Baxter & Kennedy, Inc., supra, 144 Pa.Super. at page 504, 19 A.2d at page 854. That the general employer may at any time substitute another employee and that he rents the machine and employee together, particularly where that is his business, are factors indicating a continuation of general employment. Pointing to a similar conclusion, although not necessarily decisive, would be the fact that the general employer paid the wages, deducted taxes therefrom, supplied the gas and oil, kept the trucks in repair and that the instrumentality was a valuable one requiring the services of a skilled operator.

■ Hawthorne has stressed the point that Buckley's foreman would direct the drivers where to load and unload. However, that Buckley exercised such limited control is not incompatible with a finding that the general employment continued. In an arrangement, such as existed in this case, "the contractee must of necessity have the right to indicate when and where the contractor's work shall be done, without assuming the responsibility of making the contractor or his employees, servants of the contractee." Healey v. Carey, Baxter & Kennedy, Inc., supra, 144 Pa.Super. at page 505, 19 A.2d at page 855; Robson v. Martin, supra.

Of the numerous cases cited to us by each side, closest to facts of this case is Healey v. Carey, Baxter & Kennedy, Inc., supra. Many of the indicia of a continuation of the general employment are common to both cases. Each alone might well

---

[1] There was no evidence that a driver had been complained of or ordered to stop work.

be insufficient to prove in whom the right to control was vested. Taken together they support a verdict that the general employment continued. The conclusion is that the evidence fully supports the verdict of the jury to the effect that Wilson was Hawthorne's servant at the time of the accident and that the legal conclusion of Hawthorne's liability for this case is supported by the case law of Pennsylvania.

Affirmed.