Thomas, Appellant, *v.* Bache et al.

Argued Nov. 29, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

222

*Thomas M. Lewis,* with him *Henry Greenwald,* for appellant.

*Michael A. Foley,* with him *Charles B. Waller* and *John C. Phillips,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1945:

This is an appeal from the judgment of the Superior Court, in a Workmen's Compensation case. The question is: Was the deceased husband of claimant at the time he met with a fatal accident "an independent contractor" or "an employee?" The Referee found that the deceased was the former, the Compensation Board found that he was the latter, the Court of Common Pleas of Luzerne County affirmed the Board, and the Superior Court reversed the Court of Common Pleas. The facts in this case are few and no one of them is conclusive. The decision must depend on the facts *taken in their entirety.* Are they an indicia of a *master* and *servant* relationship or of Thomas' status as an *independent contractor?* The answer to that question decides this case. The deciders must reach a decision by way of inferences.

We agree with the Superior Court in its statement that "There is no disagreement or dispute in the testimony as to the material basic facts in the case. Hence, the question . . . is not really one of fact, but of law . . . and is therefore subject to review and revision by the court, whose duty it is to declare the legal effect of the facts in evidence."

In deciding this question there is both a rule of procedure and a rule of policy which must be applied. The former is that the burden of proving that the deceased James Thomas was an employee was on the claimant: *Sechrist v. Kurtz Bros.,* 147 Pa. Superior Ct. 214, 24 A. 2d 128. The rule of policy is: ". . . neither the compensation authorities nor the courts should be solicitous to put claimants in that position [of an independent contractor] when a reasonable view of the evidence warrants a finding that the injured person was an employee": *Gailey v. State Workmen's Insurance Fund,* 286 Pa. 311, 314. To the same effect is *Myers v. Maurer & Myers,* 144 Pa. Superior Ct. 385. These two rules can be reconciled only by saying that while the burden of proof *is* on the claimant, the preponderance in favor of the claim need only be a slight one, and in drawing inferences from the facts the inferences in favor of the claim need make only a slightly stronger appeal to reason than possible inferences in opposition to it.

At the hearing before the referee the parties agreed to a stipulation of facts, of which we quote only the following:[1] "That James Thomas died on June 26, 1940 as a result of an injury by an accident sustained on June 25, 1940 while engaged in reshingling the roof of a store located at 78 West Broad Street, Nanticoke, Pa., owned by the defendant, Carter Bache. . . . That the defendant, Carter Bache, was the owner and operator of a large retail grocery and meat store in the City of Nanticoke and a branch store in the Village of Alden, of eleven farms with approximately fifty buildings thereon, and several pieces of improved real estate in the City of Nanticoke, including three apartment buildings, a double frame dwelling (two family dwelling) and two single dwellings, which later developed pieces were occupied by tenants who paid or should pay rent. That the decedent, a carpenter by trade, was engaged by the

---

[1] We omit in this opinion the parts of the stipulation, of the Referee's findings and of the board's findings, which either are repetitions or are not vital to the decision.

defendant, Carter Bache, to reshingle the roof on the said business place at 78 West Broad Street, Nanticoke. That upon occasions during several years preceding the accident the defendant had Mr. Thomas do certain carpentry work in and about the properties which the defendant owned and that on some of those occasions if the work required it Mr. Thomas had the aid of other carpenters whom he, Mr. Thomas, hired. That the work of Mr. Thomas for Mr. Bache was not exclusive nor was it consecutive. By exclusive is specifically meant that Mr. Thomas worked for others and that he did not work for Mr. Bache solely. That the decedent worked for the defendant intermittently for the last three or four years, in the performance of all of the work in his line . . . that the business and properties of Mr. Bache in Nanticoke required. . . . That during the relationship on various occasions between the defendant and the decedent all materials were purchased either directly by the defendant or by Mr. Thomas, the decedent, and in the latter event charged to the defendant by the seller of the materials. That the job started approximately two weeks before the day of the accident [but there had been only four days' work done on it before June 25.]"

The Referee made certain findings of fact in harmony with the stipulation and also the following facts, inter alia:

"9. The decedent hired 4 men to work with him on the job of reshingling the defendant's roof. One of these men was hired by the decedent at the direction of the defendant. These men were paid [for] each day by the defendant at the rate of $7.00 per day. Their time was turned in to the defendant by the decedent.

"12. The materials necessary for the reshingling of the defendant's roof in June, 1940 were ordered by the decedent and charged to the defendant. The defendant paid for these materials.

"14. We find as a fact that the defendant was not engaged in the construction of buildings.

"15. The work done by the decedent and 4 men who worked with him was directed entirely by the decedent, who also supplied the equipment with which the work was done.

"17. We find as a fact that the decedent was not employed by the defendant but was engaged by the defendant as an independent contractor.

"18. We find as a fact that the work being performed by the decedent for the defendant was casual and not in the regular course of business of the defendant."

The Board affirmed all of the findings of fact of the Referee except the 9th, 14th, 15th, 17th and 18th, which it set aside, and substituted instead the following:

"9. The decedent had 4 men working with him reshingling the defendant's roof. One of these men, Hayden Davis, was employed at the express direction of the defendant; another, Albert Cease, was employed with the permission of the defendant and a third was a regular employee in the meat and grocery store of the defendant. These men were paid by the defendant at the rate of $7.00 per day, the time for the men being turned in to the defendant by the decedent.

"14. In addition to conducting a retail meat and grocery business, defendant was engaged in the real estate business operating three apartment houses containing 13 apartments.

"15. For a period of approximately six years prior to June, 1940 decedent had done all of the carpentry work required on any of the buildings owned by the defendant.

"16. While the work done by the decedent was not directed by the defendant, the defendant had the right to control all of the work performed by the decedent for him.

"17. The relationship between the decedent and defendant was that of employer-employee.

"18. The work being performed by the decedent for the defendant was not casual and was in the regular course of the defendant's business."

The Superior Court criticized the Board's 9th finding of fact, chiefly for the statement contained therein that "the time for the men being turned in to the defendant by the decedent," and for the statement that the four men were hired by Thomas. The Superior Court said: As to the two carpenters, Davis and Cease, "Bache had asked Thomas to hire Davis. He knew of Thomas' hiring of Cease." "Mr. Bache had not hired" the two laborers "Lewis and a boy named Clapps. . . ." He did not know who [they] were previous to their coming to work." The Superior Court also criticized the Board's 14th finding that "defendant was engaged in the real estate business operating three apartment houses containing 13 apartments" in all, and the Board's setting aside the Referee's finding of fact that "the work done by the decedent and four men who worked with him was directed entirely by the decedent [Thomas], who also supplied the equipment with which the work was done."

The record facts in respect to the ninth finding are as follows: Bache testified that "I told him [Thomas] I wanted Mr. Davis to work on the job." Thomas answered: "All right." "He [Thomas] said he would get Cease [also, to work on the job], was that all right? And I said yes." In other words, Bache not only "knew" of Cease's employment, but he *expressly consented* to it. As to the laborer, Clapps, Bache in his testimony referred to him as "My boy; a boy [who] worked in the store, Clapps." It is a reasonable inference that Bache directed the employment of Clapps on this job; he must at least have consented to his employment since Clapps was a helper in his store. As the record does not show how Clapps was paid, the inference is that his pay as a boy working in Bache's store continued. The carpenter, Hayden Davis, testified as follows:

"I met Mr. Bache before this job was started. He said he was going to put a new roof on, and he said when he was ready to put it on he would have Mr. Thomas

notify me. So when the job started Mr. Thomas called me up the day before, so I went to work."

Davis said: "Thomas acted as foreman there," and that he, Davis, "looked to Mr. Bache for his money" and he "supposed" Bache "could have discharged" him. The fact that Thomas did not actually "turn in" to Bache the "time" of the two carpenters and the two laborers on the job, is unimportant. A "turning in of time" by a foreman to the paying employer is for the latter's protection. In the instant case the employees "turned in" their own time, for as the Superior Court says, "Bache knew them personally and relied on their word."

As to Bache's business, in addition to keeping a store, it is clearly set forth in the stipulation. He owned, in addition to his store, eleven farms, with buildings and "three apartment buildings, a double frame dwelling, and two single dwellings. That these tenanted and other properties required in their maintenance considerable carpenter work from time to time, which Thomas performed for Bache "during several years," clearly appears. As to Thomas' directing the work of the four other men on their job, that is entirely consistent with his status as foreman-employee, as we later point out.

The record discloses that a very loose arrangement was entered into by Bache and Thomas for this shingling job. There was no formal contract, either oral or written, and no plans or specifications. Bache testified: "I told him [Thomas] I wanted to put a roof on and that I would buy the shingles and the nails." Thomas replied: "All right." Bache said: "I never asked him [Thomas] how much he would charge me for the job." Apparently it was understood that Thomas and the carpenters were each to receive $7 a day, which was the same pay as Thomas had customarily received on the other carpenter jobs performed by him for Bache from time to time for several years. Hayden Davis testified that Thomas told him "the rate of wages on that job would be $7 [a day]." Cease, one of the carpenters, testified that he was paid $7 a day by Bache, that Thomas

told him (Cease) that "Carter Bache's rate of wages was $7 [a day] and said if we put in any more than that we wouldn't have any more work." He said: "Jim Thomas was boss, he was foreman." Both Davis and Cease testified that they gave none of their pay to Thomas.

Bache replied "yes" to the question: "You could have dismissed him [Thomas] and gotten somebody else to do the job, could you not?" In so answering, the clear implication is that Bache believed that he could have dismissed Thomas at any time and without being liable for breach of contract, as would have been the case had Thomas been an independent contractor. 14 Ruling Case Law, Sec. 8, p. 71, states: "The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself."

Thomas furnished the tools needed for the work. Bache said he "imagined" that the only tools used on this job were "the saw and hammer and axe which every carpenter has or should have." Bache also testified that it was "five or six years ago" when he first had Thomas do "general work" (apparently *carpenter* work) in his (Bache's) "business places" and that his and Thomas' relationship was "very satisfactory."

As to the frequency of Thomas' employment by Bache, Mrs. Thomas testified: "Whenever he [Bache] called him [Thomas], he went to work for him." As Mrs. Thomas thus described the nature of the work her husband had done for Bache, from time to time: One night garage doors "went wrong" and her husband went down at once to "fix them." Another night he "worked all night to put a floor in; because the store was busy

he did that on a few nights." Thomas also remodeled for Bache "one of the apartments," "tore out partitions," "remodeled a barn," "worked on another apartment and built a garage." Thomas might be described as Bache's "handy man" at any kind of carpentry work that Bache needed. Bache answered "Yes sir" to the following question: "Over a period of years that Mr. Thomas had done this work for you you did have a general understanding, did you not, that he would do your general carpentry work for you?"

"The vital test in determining whether a workman" is a servant of the person who engages him for the work "is whether" he is "subject to" the latter's "control or right of control not only with regard to the work to be done but also with regard to [the] manner of performing it": *Venezia v. Phila. Elec. Co.*, 317 Pa. 557, 177 A. 25. In *Scheel v. Shaw*, 60 Pa. Superior Ct. 74, 76, the same test of whether a man in doing a certain act is the servant of the master is expressed in the following language: "Was the act done in business of which the master is in control as proprietor, so that he can at any time stop or continue it, and determine the way in which it shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result. . . ." [2]

---

[2] In certain opinions the test: *Was defendant concerned with the result only?* is apparently used as equivalent to the test just cited. We think this over-simplified test is of little logical value, for in numerous cases in which the relationship *is* that of master and servant, the master is "concerned with the result only." For example, a car owner and his chauffeur are respectively master and servant, yet the owner's only concern in respect to the running of the car may be that it takes him daily to his destination. He may not know how to operate the car and he may exercise no control over its running, but he does retain *authority* to give orders to the chauffeur. An owner of a residence with a lawn and trees and shrubbery about it may be concerned only with the *result* of his caretaker's work in maintaining a pleasing milieu; he may not *exercise* any control over his work, though he *can* do so. In these modern days of division of labor, a master does not stand over and boss his servants as masters

Tested by this standard we think the following facts reasonably sustain the contention that Thomas was the servant of Bache:

1. Bache testified that he "could have dismissed" Thomas from "the job." While even an independent contractor *can* be dismissed from the performance of his contract, the man who dismisses him must either be able to justify legally the dismissal or respond to him in damages. The implication of Bache's testimony is that he believed that he could dismiss Thomas at will, with or without cause.

2. Of the two carpenters other than Thomas, employed on the job, Bache *selected* one carpenter, *consented* to the employment of the other, and of the two laborers employed, one of them was on his payroll as a helper in his store. For obvious reasons an *independent contractor* jealously reserves the right to hire his own workmen.

3. Thomas received from the job no profit, either directly or indirectly, but only a daily wage. While this fact is not conclusive, yet when a workman is employed at a daily wage, the inference that he is a servant and not an independent contractor, will in the vast majority of cases be in accordance with the fact.

4. All the employees, as well as Thomas himself, directly reported "their time" to Bache and were paid by him. While this fact is not conclusive it tends to support the claim that Thomas was *not* an independent contractor.

5. The looseness of Bache's engagement of Thomas for this job is more nearly consistent with the relationship of master and servant than that of owner and independent contractor. When a person engages a contractor to do a repair job on the former's property there is usually an explicit arrangement about the cost of the

---

did in a primitive era. Most farm owners in earlier days directed their "farm hands." Many farm owners now have foremen to direct the farm labor and the absent owner is "concerned only with the result."

job, the time limit for performance, etc., but when a master engages a servant to do work for him, he is likely to rely for his own protection not on a contract, oral or written, but on his power to dismiss that servant at will.

6. The fact that for several years, either at night or by day, Thomas was at the "beck and call" of Bache to do any kind of carpenter or repair work for him at a daily wage, tends to give him the status of an employee and not that of an independent contractor.

In support of the claim that Thomas was an independent contractor it is contended that "Thomas had full control of the men and directed them what they should do." The weakness of this argument is that the fact stated fits into the status of foreman as well as into the status of independent contractor. The two carpenters who worked with Thomas described him as their foreman. A foreman is exactly what the name implies. He leads, i.e., directs, other employees. A section foreman on a railroad or a highway not only has full control of his men and directs them but customarily can "hire and fire" them. This is true also of a mine foreman, who ordinarily has hundreds of men under his direction. He ranks as an "employee": Sec. 202 of Workmen's Compensation Act of 1915. Under the Act of June 1, 1915, P. L. 716, a mine foreman has "full charge of all the inside workings and the persons employed therein," yet a mine foreman is not an independent contractor. He is legally "under the supervision and control of the operator," though the latter may never even visit the mine and may be, and often is, utterly ignorant of the art of managing a coal mine. He is interested only "in the *results* of the operation."

In further support of the contention that Thomas was an independent contractor and not an employee the fact is emphasized that one day Thomas took carpenter Cease off the Bache job and sent him to the "Shriner Estate" to do a half day's work there. This work consisted only of "putting in a window, that is, cut an open-

ing and frame and patch up the siding around there" (quoting from Cease's testimony).

Considering the long continued and friendly relationship existing between Bache and Thomas, characterized by implicit confidence in each other's fair dealing, we cannot say that Thomas' act in taking Cease off the Bache job and putting him to work on another job directed by Thomas, and which "they claimed" [3] was "a contract job between Thomas and Shriner" proves that Thomas' relationship to Bache in the shingling job was that of an independent contractor. It may well be that Cease was not needed on the Bache job for that half day, and that he could be spared for that brief period to help another person in need of his services in putting in a new window. Thomas in his capacity of "foreman" might reasonably have taken it for granted that Bache would not object to his letting Cease "help out" for a half a day on another job, especially as it cost Bache nothing. We think it is not unusual for a foreman on jobs which are being done for an obliging employer (as Bache apparently was) to let one of his employees off for a short period to help someone in urgent need of help. Among the powers usually vested in any "foreman" is that of giving any of his men a "day off" occasionally.

In interpreting *wills* this court has said *(Williamson's Est.,* 302 Pa. 462, 466, 153 A. 765, quoting from an 18th century English scholar) : "No will has a brother." It may with equal appropriateness be said that of the many "close cases" involving the same question as is presented by this record and reaching the two appellate courts of the state that *no two* of them present substantially the same facts. All the cases cited in support of the contention that Thomas was an independent contractor can be distinguished from the instant case.

---

[3] Cease so testified. His testimony was not only "hearsay" but also immaterial and irrelevant for Thomas *could* have been an independent contractor on the *Shriner* job and merely a *foreman* on the *Bache job.*

For example, in *Long v. Eastern Paving Co.*, 295 Pa. 163, 145 A. 71, the driver-owner of a truck doing hauling work for another and *not subject to that other's orders*, except as to the place of loading or unloading was held to be an independent contractor. In *Koch v. Matter et al.*, 307 Pa. 337, 161 A. 309, we held the facts to be "plaintiff was bound to complete the work" for which he was engaged, "and the defendants could not discharge him, or prevent him from finishing it so long as he was performing his contract in good faith." In the instant case, it is apparent that either Thomas or Bache could have terminated the employment at any time, without liability to the other. In *Simonton v. Morton*, 275 Pa. 562, 119 A. 732, the contractor employed, paid and had full power to control the workmen. We held that this was practically decisive of his independence. In *Smith v. State Workmen's Insurance Fund*, 262 Pa. 286, 105 A. 90, there was a written communication between the parties which was treated as a contract in which one of the parties agreed to transfer all freight between certain points at stipulated prices, the manner of doing which, including the employment, payment and control of the necessary labor, was left entirely to him. He was held to be an independent contractor. In *Bradley v. Chester Materials Co.*, 151 Pa. Superior Ct. 485, the repair of a steam boiler was held to be "not of a kind usually performed by or under the control of the person conducting the business. It is otherwise where such work is entrusted to a regular employee. . . . The work was of a type usually performed by a specialist" and the Board found that "defendant did not reserve the right of supervision." In the instant case the Board found that Thomas "had done all the carpentry work required" on defendant's buildings for approximately six years. (This practically gave Thomas the status of repairman on Bache's properties.) The Board also found by what we hold to be a legitimate inference that "the defendant had the right to control all the work performed by the decedent for him."

The case which the Superior Court says "most nearly resembles this one" is that of *Sechrist v. Kurtz Bros.*, 147 Pa. Superior Ct. 214, but that case and this are distinguishable. The claimant there was an electrician and his services were "specialized"; it was "to change the electric power mains in defendant's plant." That was obviously a job the defendant would know nothing about and would have no desire to attempt to control. As the Superior Court said: "The work was of the type usually performed by a specialist, and which defendant would not have been qualified to supervise or direct." In the instant case, the work done by Thomas, to-wit, laying shingles to a line on a roof and nailing them down, is about as commonplace work as carpenters are ever called upon to perform and if Bache had inspected the work he could have determined whether or not it was being done properly. In the Sechrist case the Superior Court said "when he [Sechrist] worked, was largely discretionary." In the instant case Bache evidently expected Thomas to stay on the job. In the Sechrist case, those who assisted Sechrist "were never carried on defendant's payroll." The Superior Court said this fact is entitled "to some consideration as indicative of lack of intention to create the relation of master and servant." In the instant case all four employees *were* carried on defendant's payroll.

In the Sechrist case, "the work," as the Superior Court pointed out "which plaintiff did for defendant was not a part of the regular business of defendant." In the instant case, Thomas' work while not a part of defendant's *store* business was a part of the defendant's work in the *upkeep of his many properties.* "An employee may be engaged in more than one business": *Dobrich v. Pittsburgh Terminal Coal Corp.*, 145 Pa. Superior Ct. 87. In the case of *Miller v. Farmers Nat. Bank et al.*, 152 Pa. Superior Ct. 405, 409, the Superior Court said: "Maintenance is a necessary part of the business of operating a building leased to tenants for profit." In the Sechrist case the Superior Court pointed out that

"the admitted relationship of the parties had previously been that of contractor and contractee." It also pointed out that "claimant was performing the work for defendant in accordance with plans which he himself had prepared." In the instant case there is no evidence that Bache and Thomas ever bore to each other at any time the relations of "contractor and contractee," and there were no "plans" for the shingling of the roof. In the Sechrist case the Board of Compensation found the decisive facts to be against the claimant. In the instant case the Board found the decisive facts to be in favor of the claimant.

A case "resembling" the instant case is that of *Miller v. Farmers Nat. Bank et al.*, 152 Pa. Superior Ct. 405. There the Superior Court in reversing the Referee, the Board and the Court of Common Pleas held that claimant's husband who was hired at an hourly rate to paint the ceiling of a hallway in defendant's bank and who while doing so, fell from a scaffold and was fatally injured was an *employee* and not an independent contractor. The court stated that the bank in leasing part of its building was engaged in "a limited phase of the real estate business." It said, "the fact that the building in question is comparatively small, with few tenants . . . does not change the character of the holding."

It was further held that claimant's husband was not a mere casual employee of defendant. "Some work of like nature was done in the building last year . . . and decedent was employed to do it." The bank official said: "He was our man for that work." Thomas was for several years Bache's "man" for "that work" (repairing Bache's properties). The Superior Court said in an opinion by Judge HIRT: "One may be a regular employee if he performs all of the work of a class which the employer can supply; full time employment is not essential to take the work out of the class of casual employment. In *Cochrane v. Wm. Penn Hotel*, 339 Pa. 549, 16 A. 2d 43, Mr. Justice STERN said: ". . . even though an employment is not continuous, but only for the performance of

occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of frequency and regularity, and, it being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise." . . . There is no essential difference, in the nature of the employment, between the making of frequent minor repairs of furniture and equipment in a hotel and the less frequent but more extensive work of redecorating and rejuvenating a tenant building. Tenure of service may persist throughout the year though the work provided is not continuous.

We agree with the Superior Court that "Thomas could not be, at the same time, the employer of the men working under him and the employee of Bache." But we think this record upholds the Board's findings that while Thomas "had four men working with him reshingling the defendant's roof," *Bache* and not Thomas *was the employer* of the two carpenters and the one laborer. *Who* was the employer of the second laborer does not appear but it is reasonable to infer that he was the same man who employed the other three men, i. e., Carter Bache. Even if Thomas hired all the workmen that would not make *him* their employer within the meaning of the Act. Foremen usually have the right to put men to work as well as to discharge them.

All the surrounding indicia of Bache's control of Thomas and the other employees in the doing of the work ordered by Bache lead to the determination that Thomas was Bache's *employee* and *not* an independent contractor. As Judge, now President Judge, KELLER of the Superior Court said in 107 Pa. Superior Ct. 166, 171: "If the owner, or person for whom the work is done, has the right to select the employees who do the work, the power to remove and discharge them, the right to direct both what work shall be done and the way and manner in which it shall be done, then the relation of master and servant exists." The record indicates that Bache had the "rights" just enumerated. The Board's 16th find-

ing of fact, supra, in reference to Bache's "right to control" is supported by sufficient competent evidence, and as Judge RHODES, speaking for the Superior Court, said in *Paulin v. Williams & Co.*, 122 Pa. Superior Ct. 462, 466, (affirmed in 327 Pa. 579) : "Where the findings of fact made by the board are based on competent evidence they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board. [Citing cases.] Neither the lower court nor an appellate court can say that the board must find one way or another. Although it may feel that the weight of the evidence, as a whole, is against the finding of fact so made, it may not disturb that finding if it is supported by sufficient legally competent evidence. [Citing cases.] There can be no interference by the courts with such findings, whether they be based on proved facts or inferences therefrom. [Citing cases.]"

"If the facts are not in dispute, and the evidence is direct and certain, presenting no question of credibility, and leaving no sufficient ground for inconsistent inferences of fact, it is for the court to declare their legal effect" : *Campagna v. Ziskind*, 287 Pa. 403, 408. We declare the legal effect of the facts found by the Workmen's Compensation Board, on sufficient competent evidence, to be that the relation between Bache and Thomas was that of employer and employee, respectively. We also uphold the Board's finding that "the work being performed by the decedent for the defendant was not casual and was in the regular course of the defendant's business."

The judgment of the Superior Court is reversed and the judgment of the Court of Common Pleas of Luzerne County in favor of the claimant, Amelia Thomas, and her minor daughter, Marie Thomas, and against the defendant, Carter Bache, and his insurance carrier, Indemnity Insurance Company of North America, is reinstated and affirmed.