## Wall *v.* Penn Lumber & Mill Works, Appellant.

Argued March 26, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Herbert A. Barton*, with him *Roger B. Reynolds* and *Swartz, Campbell & Henry*, for appellants.

*Francis Logan*, with him *Robert C. Duffy* and *Desmond McTighe*, for appellees.

OPINION BY GUNTHER, J., July 17, 1952:

In this workmen's compensation case Miriam Wall filed her petition for compensation on behalf of herself and four minor children naming Penn Lumber and Mill Works (hereinafter called Penn) and West Motor Freight (hereinafter called West), appellant, as the employers of her husband, Charles Wall, who was killed on September 15, 1949, while driving on business of West when the tractor-trailer he was operating overturned and caught fire. Each defendant filed an answer averring that the other defendant was the deceased's employer at the time of death. The referee and the board found West was deceased's employer and awarded compensation. The court below affirmed the award and entered judgment accordingly. West and its insurance carrier have now appealed.

Dependency and the happening of events which entitle the widow and her children to compensation are conceded. The controversy revolves around the question of which company was deceased's employer when he met his death and therefore liable to pay compensation.

The record establishes that Penn is a lumber and mill working concern in Pennsburg, Pennsylvania; West is a common carrier hauling freight for hire. On September 14, 1949, a "Motor Vehicle Lease and Agreement" was entered into between Penn and West where-

by Penn as lessor leased a tractor to West as lessee "for the duration of a single outbound (return) trip to be used by Lessee in transporting property from Hamburg, Pennsylvania to Atlanta (Georgia) and return . . .". There follows a description of the equipment leased together with the price thereof and the rates of wages to be paid to Charles Wall, the driver. The critical provision of this lease is lessee's covenant (a) whereby the lessee "Agrees that during the term of this lease, the said vehicle shall be solely and exclusively under the direction and control of the Lessee who shall assume full common carrier responsibility (1) for loss or damage to cargo transported in such motor vehicle and (2) for the operation of such vehicle." Further pertinent lease provisions read as follows: "The compensation to be paid by Lessee to the Lessor for the lease of the vehicle described herein shall be the sum of 19¢ per mi. which amount shall constitute full and complete payment by Lessee for all equipment and materials supplied, maintenance and operating expense, wages of driver, all taxes, insurance, including social security, workmen's compensation and withholding tax." Samuel W. Hillpot, general manager of West, testified that the deceased driver received specific instructions from and was under the direct control of the night dispatcher of West; that the deceased driver was subject to the direct orders and control of West. The compensation authorities on the basis of the foregoing found as facts that West assumed control of both the driver and the equipment; that no control was exercised over the deceased by Penn, but that control as to the work done by decedent was exercised by West; and concluded that Charles Wall, the deceased, was an employe of West at the time of the fatal accident.

Appellant contends that it was error not to find that Penn was the employer at the time of the fatal accident since the lessor agreed in the lease agreement

to ". . . maintain, service and keep the vehicle . . . in good repair, provide all gas, oil, tires and other equipment . . ." and further was liable for ". . . loss or damage to or destruction" of the vehicle and where the lessor agreed to indemnify the lessee against loss resulting from injury or death of the driver.

In similar situations to the instant case, it has been reiterated that the element of control or power to control the employe at the time of the accident is the crucial or vital consideration. Cf. *McGrath v. Budd Manufacturing Co.*, 348 Pa. 619, 36 A. 2d 303. In *Hoffman v. Montgomery County*, 146 Pa. Superior Ct. 399, 22 A. 2d 762, it was said "The controlling test to determine responsibility for a lent servant is, who has control and the right to direct where he is to work and how he is to work. [*Thatcher v. Pierce*, 281 Pa. 16, 125 A. 302; *Robson v. Martin*, 291 Pa. 426, 140 A. 339.] Where it is established that the temporary master has control over the work to be done and the manner of doing it, he alone is liable for compensation for the accidental death of a workman". Cf. *Pa. Smelting & Refining Co. v. Duffin*, 363 Pa. 564, 70 A. 2d 270; *Robson v. Martin*, 291 Pa. 426, 140 A. 339; *McGorry v. Sterling Supply Corp.*, 116 Pa. Superior Ct. 563, 176 A. 808.

It may well be that the deceased was generally employed by Penn, but at the time of the fatal accident was particularly or specifically employed by West. "It is a well recognized rule that, where one may be in the general employ of another, yet he may, with respect to particular work, be transferred to the service of a third person, in such a way that he becomes, for the time being, the servant of that person with all the legal consequences of that relation:" *Robson v. Martin*, 291 Pa. 426, 430, 431, 140 A. 339.

A careful examination of the record clearly establishes the existence of substantial competent and credi-

ble evidence to sustain the findings of fact and conclusions of law of the compensation authorities as affirmed by the court below. The findings are consistent with each other and we find no error in the application of the law thereto.

Judgment affirmed.