## Bogan *v.* Smoothway Construction Company, Appellant.

172

Argued November 14, 1956.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*John F. Will, Jr.,* for appellant.

*Saul J. Bernstein,* with him *Irving Sikov,* and *Bernstein & Campbell,* for appellee.

OPINION BY RHODES, P. J., March 20, 1957:

This is an appeal in a workmen's compensation case.   The following are the principal issues: (1) Whether deceased, the husband of claimant, who drove his own truck for the defendant road construction company, was an independent contractor or an employe of defendant at the time of his death, and (2) whether his death was due to natural causes or to an accidental injury, assuming deceased was employed by defendant.

The evidence before the compensation authorities showed little contradiction as to the basic facts. The defendant corporation was engaged in a road construction job at North Apollo near Pittsburgh. Defendant owned three trucks and employed drivers to operate them. On occasion additional trucks were used; deceased's truck was one of these. Deceased, who owned and operated his truck, supplied the gasoline and oil; defendant did not withhold income tax or social security tax from payments made to deceased. Deceased's duties were to haul slag, stone, or asphalt in his own truck. Deceased met his death on October 31, 1952, about 11:30 a.m. He had been directed that morning to use his truck to haul a 1,000 gallon empty steel water tank weighing 500 pounds from North Apollo to defendant's stock yard nearby. The tank was unloaded from deceased's truck by defendant's crane. William Gamble, who had been hired to drive his own truck for defendant, stood about fifteen feet behind deceased's truck and observed the unloading operation. After deceased had placed a "sling" around the tank, and after it had been lifted off the truck defendant's craneman called to deceased to take hold of the tank so it would not swing in the wind and damage a spigot on the lower side. Ordinarily the craneman's assistant would have steadied the tank, but he was absent on this occasion. Defendant's president testified that it was deceased's job to connect the "sling" but not to steady the tank in unloading. The crane operator had authority to give orders to deceased in crane operations connected with unloading. Gamble testified that he saw deceased endeavor to hold the tank, that a strong wind was blowing, that the tank swung and struck deceased near his left eye, that deceased fell to the ground, and that, after a feeble struggle, he appeared to collapse.

On cross-examination Gamble stated that he did not actually see the tank strike deceased, but that he deduced this from the mark over deceased's left eye. Deceased was taken to a nearby doctor who pronounced him dead.

At the request of the coroner, Dr. Ralph M. Weaver performed an autopsy that evening. In Dr. Weaver's opinion death was due to the rupture of a bleb on deceased's lung. In answer to a hypothetical question, Dr. Weaver stated that the exertion of steadying a 1,000 gallon tank swinging in the wind would certainly be sufficient to cause a bursting of one of the blebs found on the lungs. Dr. Weaver further gave as his positive opinion (see *Hodgdon v. Kerr Salt Company,* 176 Pa. Superior Ct. 177, 180, 106 A. 2d 621) that the struggle with the tank was such an exertion as to rupture the bleb on the lung and cause death. On cross-examination, Dr. Weaver also stated that the bleb on the lung could have ruptured at any time without unusual exertion.

The referee concluded that deceased was an independent contractor, and that death was not due to an accident but to natural causes. On appeal by claimant, the Workmen's Compensation Board affirmed the conclusions of the referee. On further appeal, the Court of Common Pleas of Butler County concluded that deceased was a temporary employe of defendant during the unloading of the truck, and that there was not sufficient evidence to justify the referee's conclusion, affirmed by the board, that death was due to natural causes. The case was remanded to the board for additional testimony on causation and for new and further findings and conclusions consistent with the court's opinion. Defendant appealed to this Court.

Ordinarily an order of the court below remitting the record to the board for additional testimony and

for further findings is interlocutory and not appealable. The Pennsylvania Workmen's Compensation Act, Act of June 21, 1939, P. L. 520, §1, as amended by the Act of May 27, 1943, P. L. 691, §1, 77 PS §877; *Wilk v. The Budd Company,* 174 Pa. Superior Ct. 108, 110, 111, 100 A. 2d 127. Where the court in substance directs the board to find certain facts it acts outside its province and the order of remission is appealable. *DeBattiste v. Anthony Laudadio & Son,* 167 Pa. Superior Ct. 38, 44, 74 A. 2d 784. In the present case the court's opinion and order are directory with respect to the issue of employment. On the question of causation the court applied an erroneous scope of review when it examined the record to determine whether there was sufficient evidence to support the board's conclusion that deceased died from natural causes rather than from an accidental injury. Where the compensation authorities have found against the party having the burden of proof, in this case the claimant, the question on appeal is not whether the findings of fact are supported by sufficient competent evidence, but rather whether there has been a capricious disregard of the competent evidence by their refusal to so find. *Kline v. Kiehl,* 157 Pa. Superior Ct. 392, 395, 43 A. 2d 616; *Allen v. Patterson-Emerson-Comstock, Inc.,* 180 Pa. Superior Ct. 286, 292, 119 A. 2d 832. Under such circumstances, we conclude that the order of remission is appealable. It is something more than a mere remission to the board for more specific findings as provided in the Act (77 PS §877). But the unusual feature of the case is that, although the court below reviewed the board's action by an erroneous standard, the ultimate conclusion to remand the case to the board for the entry of "new and further" findings of fact is correct.

The only findings of fact on the questions of employment and causation were those made by the ref-

eree; the board, although it discussed the testimony, made no additional findings. The referee's findings of fact are wholly inadequate for a proper disposition of the case. As to employment the referee made the following so-called finding of fact: "Second: Your Referee finds as a fact that at the date of death of the decedent, October 31, 1952, the deceased was operating as an independent contractor for the defendant." This "finding of fact" is no more than a conclusion notwithstanding its label. No facts basic to a conclusion that deceased was an independent contractor are set forth. There is nothing to indicate whether deceased at the time of the accident was or was not subject to defendant's control or right of control with regard to the work to be done and the manner of performance. These are matters essential to any conclusion on employment. *Cookson v. Knauff,* 157 Pa. Superior Ct. 401, 404, 43 A. 2d 402; *Felten v. Mellott,* 165 Pa. Superior Ct. 229, 232, 67 A. 2d 727. From the evidence it would appear that deceased was, in a general sense, an independent contractor. He contracted to furnish a truck and driver and to perform the limited work of hauling for defendant. On the other hand, defendant's president admitted that, while deceased's duties may have included some assistance in unloading the truck, they did not encompass the duty of steadying the tank in the wind as it was lowered by the craneman to the ground. In the process of unloading, truck drivers such as deceased were subject, to some extent, to orders or requests of defendant's craneman.

It is well settled that " 'one may be in the general employ of another, yet he may, with respect to particular work, be transferred to the service of a third person, in such a way that he becomes, for the time being, the servant of that person with all the legal consequences of that relation' ": *Wall v. Penn Lumber &*

*Mill Works,* 171 Pa. Superior Ct. 512, 515, 90 A. 2d 273, 275. See Restatement, Agency, §227, comment d, and illustration 6 thereof. No reason has been suggested why a person generally in the relationship of independent contractor might not become a temporary employe as to certain tasks where direct control and supervision are exercised. "A person employed by another may be an independent contractor as to some phases of his work and, at the same time, an employee as to other phases; and the person for whom the work is being done is liable for compensation only if the worker is injured while engaged in that phase of the work in which he is an employee." 71 Corpus Juris, Workmen's Compensation Acts, §207, p. 477. See *Powley v. Vivian & Co., Inc.,* 154 N. Y. S. 426, 430, 169 App. Div. 170. The temporary employment of deceased by defendant to perform the act of steadying the tank would not be inconsistent with his immediately prior status as an independent contractor, the performance of which duties he had completed. That he may not have been paid by defendant for this particular act is not controlling. See *Atherholt v. William Stoddart Co.,* 286 Pa. 278, 279, 280, 133 A. 504. Neither the compensation authorities nor the courts should be solicitous to put those who work in the position of an independent contractor. *Thomas v. Bache,* 351 Pa. 220, 223, 40 A. 2d 495; *Felten v. Mellott,* supra, 165 Pa. Superior Ct. 229, 234, 67 A. 2d 727. The Workmen's Compensation Act is a remedial statute and is to be liberally construed in order to accomplish its avowed purpose. *Allen v. Patterson-Emerson-Comstock, Inc.,* supra, 180 Pa. Superior Ct. 286, 291, 119 A. 2d 832. Therefore, we think it is necessary that more detailed findings of fact be made by the board on the issue of employment, especially as to whether deceased was or was not within the control of defendant's craneman in

steadying the tank in the wind after it had been removed from his truck.

On the issue of causation the finding of fact is likewise inadequate. The referee thus stated his finding: "Third: Your Referee finds as a fact that the death of the decedent on October 31, 1952 was not the result of an accident but was due to natural causes." The uncontradicted testimony of William Gamble, who saw deceased collapse after struggling with the tank, and the testimony of Dr. Weaver, who performed the autopsy, would tend to establish that the unusual exertion by deceased in steadying the 500 pound tank swinging in the wind caused the bleb on his lung to burst. The fact that Dr. Weaver stated on cross-examination that the bleb could have ruptured at any time, even without exertion, may tend to show that deceased could have died solely from a non-accidental occurrence, but it does not seriously detract from the clear inference that the unusual exertion of steadying the tank in the wind actually caused the bleb to burst. It is true that the compensation authorities were not bound to accept this uncontradicted testimony as true (*Kline v. Kiehl*, supra, 157 Pa. Superior Ct. 392, 394, 395, 43 A. 2d 616), but it was improper for the referee and the board to conclude that death was due to "natural causes" without making basic factual findings to support that conclusion. See *Allen v. Patterson-Emerson-Comstock, Inc.*, supra, 180 Pa. Superior Ct. 286, 293, 119 A. 2d 832. This matter should be given further consideration by the board. It may also be well to add that we do not agree with the statement of the board in its opinion that the relation of cause and effect as testified to by Dr. Weaver is "quite tenuous." If that was the controlling reason for the board's conclusion that deceased died of natural causes, it may amount to a capricious disregard of the competent evi-

dence. But of course we cannot decide that matter until detailed findings of fact are made.

Our decisions have clearly indicated that it is the duty of the board as the ultimate fact-finder to resolve conflicts in the evidence, determine credibility, weigh the evidence, and draw legitimate inferences therefrom. The board cannot properly adopt findings of the referee which are manifestly inadequate without making a further independent review and additional findings. On appeal we cannot infer findings of material facts from a mere conclusion; the essential and ultimate findings must be specifically made. See *Hamilton Unemployment Compensation Case*, 181 Pa. Superior Ct. 113, 119, 120, 124 A. 2d 681.

The board on remand should permit claimant and defendant to introduce additional testimony on the two issues if either so desires. See *Allen v. Patterson-Emerson-Comstock, Inc.*, supra, 180 Pa. Superior Ct. 286, 294, 119 A. 2d 832.

The order of the court below to the extent that the record is to be remanded to the Workmen's Compensation Board is affirmed; but the court is directed to return said record to the board for the taking of additional testimony if desired, for its further consideration and determination after making adequate findings of fact, and for the entry of a proper order consistent therewith.

WOODSIDE, J., files a dissenting opinion in which WRIGHT, J., joins.

_____

DISSENTING OPINION BY WOODSIDE, J.:

In my opinion the finding of the referee and the board that "the death of the decedent on October 31, 1952 was not the result of an accident but was due to

natural causes" was sufficient "basic factual finding", and was not arbitrary and capricious. The law makes the referee and the board the fact finders. This Court should not attempt to assume the prerogative of a fact finder through the device of remanding cases. As I agree with the holding of the majority that the court below reviewed the board's action by an erroneous standard, I would reverse that court, and affirm the board.

WRIGHT, J., joins in this dissent.