Miller, Appellant, *v.* Farmers National Bank et al.

406

Argued April 13, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Robert M. Dale,* for appellant.

*Paul F. Koesling,* for appellee.

OPINION BY HIRT, J., July 16, 1943:

Claimant's husband, while painting the ceiling of a hallway in defendant's bank building, fell from a scaffold and died from a fractured skull. Both the referee and the board refused compensation on the ground that the employment was casual, and not in the regular course of defendant's business. The lower court affirmed, with some reluctance, concluding that the case is ruled by *Ronan v. Eddy,* 136 Pa. Superior Ct. 436, 7 A. 2d 534. The character of the employment and its relation to defendant's business, present the questions of law (*Callihan v. Montgomery,* 272 Pa. 56, 115 A. 889) raised on this appeal.

Defendant is a National Bank. It owns a three-story brick building on the main street of the Borough of Emlenton. The first floor of the building is the banking house. On the second floor there are three apartments leased to tenants as living quarters, and one office. Two assembly halls on the third floor are occupied by a Masonic lodge and an affiliate. The second and third floors are income producing. The bank manages and maintains the building through two members of its board of directors acting as a building committee. The

items of rental received and of maintenance expense appear on the books of the bank as a part of its business and the net profit from operation is mingled with and becomes a part of the bank's general earnings.

Banks in establishing banking houses are permitted to enter a limited phase of the real estate business as an adjunct to that of banking. In cities some office buildings owned and in part occupied by banks are comparable in size and appointments with those built with private capital exclusively for profit. In small communities the size of the building necessarily is limited not only by the resources of the bank but by the demand for space at a profitable return. In either case the motive is the same: to reduce the carrying cost of the investment in the banking house by the profit in rental income from the remainder of the building.

An employer may be engaged in more than one business. *Dobrich Admx. v. Pgh. Term. Coal Corp.*, 145 Pa. Superior Ct. 87, 20 A. 2d 898. And when a bank in its own interest operates an office or apartment building in conjunction with its banking house it is engaged in the real estate business to that extent, separate and apart from, though adjunct and subsidiary to, its chartered business of banking. The fact that the building in question is comparatively small, with few tenants and a restricted income does not change the character of the holding. Defendant was engaged in two enterprises; banking, and the business of operating and managing a tenant building for profit.

It does not necessarily follow however that a workman injured while performing some service for the defendant in the tenanted part of the building, is entitled to compensation. If the employment is both casual and outside the regular course of this branch of the business of defendant there can be no recovery. Act of June 2, 1915, P. L. 736, art. 1, §104, as amended, 77 PS 22.

Maintenance is a necessary part of the business of operating a building leased to tenants for profit. The necessity for repairs, alterations and redecorating does not recur as frequently as in the management of a hotel (Cf. *Cochrane v. Wm. Penn Hotel*, 339 Pa. 549, 16 A. 2d 43) but repairs must be made on occasion and periodic renovation of the building is essential if maximum rental values are to be maintained. While repairs and renovation are necessary incidents of the business of the owner they may or may not be within the "regular course" of that business. Where they become necessary only in sporadic instances or because of emergencies and are not such as normally would be performed by employees of the owner, they ordinarily fall outside the regular course of the owner's business. On the other hand repairs, alterations and renovation are within the regular course of the business of, e. g., the owner of a large office building who makes them so by the full time employment of maintenance men for the purpose. Cf. *Hauger v. Walker Co.*, 277 Pa. 506, 121 A. 200. The principle has been thus stated in *Callihan v. Montgomery*, supra, p. 72: "The legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repairing the premises, appliances or machinery used therein."

In our view, under the facts in this case, the work performed by decedent was outside the regular course of the business as conducted by defendant. Although redecoration is maintenance, it was not assumed by the defendant as a part of the normal operation of its tenant building. The volume of work of this class did not justify the full time employment of a workman for

this purpose and the defendant did not otherwise enlarge the scope of the conduct of its business to bring painting of the building within its regular course under the rule of *Hauger v. Walker,* supra.

On the other hand, it seems clear that the nature of decedent's employment and the contract of hiring took the work out of the class of casual employment. Decedent was a painter and paperhanger. He was directed in this instance to repaint the walls and ceiling of the hallway on the second floor of the building as well as the approach from the first floor and the hallway leading to the third floor. The work also involved the removal of paint and varnish and the refinishing of the woodwork and floors. The bank supplied scaffolding and all materials. Decedent was to be paid for his services at an hourly rate. The contemplated improvement would require from eight to ten weeks for completion. Some work of like nature was done in the building each year in accordance with a definite maintenance program and for a number of years decedent was employed to do all of this class of the work. The officer of the bank who employed him testified that on each occasion the bank undertook to do the work itself rather than to let it out on contract; that "He was the man always called upon for this kind of work ......
He was our man for that work." Decedent, though his services were intermittent was regarded a "regular employee" of the bank, hired "for that business." One may be a regular employee if he performs all of the work of a class which the employer can supply; full time employment is not essential to take the work out of the class of casual employment. In *Cochrane v. Wm. Penn Hotel,* supra, Mr. Justice STERN said: "......
even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of frequency and regularity, and, it

being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise. Even if there be but a single or special job involved, this does not conclusively stamp the employment as casual. If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual, and it is immaterial that the accident to the employee for which compensation is sought may occur within a very short period after his entry upon the work." There is no essential difference, in the nature of the employment, between the making of frequent minor repairs of furniture and equipment in a hotel and the less frequent but more extensive work of redecorating and rejuvenating a tenant building. Tenure of service may persist throughout the year though the work provided is not continuous. Here, as in the *Cochrane* case the work was not incidental merely but was a part of a planned project providing the decedent with employment each year for periods of fairly long duration. In the light of these principles employment in the present case cannot be said to be casual.

The *Cochrane* case modified the law of *Ronan v. Eddy* to some extent. A majority of us are of the opinion that the *Ronan* case cannot be considered authoritative when applied to compensation claims of this class and that it must be regarded as overruled insofar as it is inconsistent with our conclusions here.

Judgment reversed. The record is remitted for the purpose of computing the compensation due claimant and for the entry of an award.

BALDRIGE, J., dissents.