## Military Leaves of Absence

THOMAS D. MCBRIDE, Attorney General, and JEROME H. GERBER, Deputy Attorney General, September 5, 1957.—You have requested an opinion as to the proper interpretation of the Veterans Preference Act of July 8, 1957, P. L. 557. You inquire specifically as to whom the words "regularly employed" apply and more particularly if hourly and per diem employes, employed for less than 750 hours or 100 days per annum are eligible for military leaves of absence, and whether hourly or per diem employes employed for greater periods per annum are similarly eligible.

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533, states that words and phrases shall be construed according to their common and approved usage, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in the act, shall be construed according to such peculiar and appropriate meaning. Of course, the troublesome word is "regularly". In Webster's New International Dictionary, second edition, page 2099, the word "regularly" is defined as: "In a regular, orderly, lawful, or methodical way; . . ."

On this same page we find the word "regular" defined as follows: "3. Steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation; returning or recurring at stated or fixed times or uniform intervals; . . ."

This particular definition has been approved by several courts: Bankers & Shippers Ins. Co. of New York v. Blackwell, 260 Ala. 463, 71 S. 2d 267, 270 (1954) ; Ellis v. Stokes, 207 Ga. 423, 61 S. E. 2d 806, 809 (1950). In addition, the Supreme Court of Pennsylvania in Zulich v. Bowman, 42 Pa. 83, 87 (1862), relied upon Webster's Dictionary to determine the meaning of the adverb "regularly".

In Miller v. Farmers National Bank, 152 Pa. Superior Ct. 405, 33 A. 2d 646 (1943), the court was called upon to define "regular employe", in connection with a workmen's compensation claim. The facts indicated that decedent was a paperhanger and painter and was directed by the bank to repaint the walls and ceilings of parts of the building. Decedent was to be paid for services at an hourly rate. The contemplated work would require from 8 to 10 weeks for completion. Some work of a like nature was done in the building each year in accordance with a definite

maintenance program and for a number of years decedent was employed to do all of this class of work. The court found that decedent, though his services were intermittent, was a regular employe of the bank. Judge Hirt stated, at page 410:

". . . One may be a regular employee if he performs all of the work of a class which the employer can supply; full time employment is not essential to take the work out of the class of casual employment. In Cochrane v. William Penn Hotel, supra [339 Pa. 549, 16 A. 2d 43], Mr. Justice Stern said: '. . . even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of frequency and regularity, and, it being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise. Even if there be but a single or special job involved, this does not conclusively stamp the employment as casual. If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual, and it is immaterial that the accident to the employee for which compensation is sought may occur within a very short period after his entry upon the work.' . . . Tenure of service may persist throughout the year though the work provided is not continuous. . . ."

The case of Cochrane v. William Penn Hotel, 339 Pa. 549, 16 A. 2d 43 (1940), was cited by the court in Gardner Application, 6 D. & C. 2d 742. Here the court was called upon to determine whether the applicant for a detective license had been regularly employed as a detective. The court was willing to assume that because the applicant worked about 300

hours a year on an hourly basis over a period of three to five years that this constituted regular employment. However, because there were only sporadic instances of true investigative work connected with the applicant's work, the court was unable to conclude that he was regularly employed as a detective.

In addition, there are interpretations of the term "regularly employed" as this was used in the Act of June 7, 1917, P. L. 600, 65 PS §111, a predecessor of the Veterans Preference Act of July 8, 1957, P. L. 557, 51 PS §493.1 et seq. For example, a person employed as an extra stenographer was ruled not to be a regular employe: 1917-1918 Op. Atty. Gen. 299, 300. Similarly, a substitute called to perform the duties of one in military service was not considered to be regularly employed, for his tenure was dependent upon the return of the person whose place he was taking: 1917-1918 Op. Atty. Gen. 503. We also note that the Act of June 14, 1947, P. L. 609, amending section 222 of The Administrative Code of April 9, 1929, P. L. 177, granted leave privileges to hourly and per diem employes at a rate of one day for each 200 hours of employment. There was no statutory requirement for a minimum number of hours or days per annum to qualify such employes for this benefit.

From the authorities above cited it is clear that no hard and fast rule can be set forth in defining the term "regularly employed". However, guide posts are set within which determinations in particular cases are to be made. The answer lies not in the quantum of work involved but in the steadiness and uniformity of recurrence of the employment.

In reaching this conclusion we have not overlooked the provisions of the Act of June 27, 1923, P. L. 858, as amended, 71 PS §1731, which, for the purposes of State employes' retirement benefits, states:

"The term 'State employe' shall also include officers and employes regularly employed on a per diem or hourly basis, or partly at a fixed annual or monthly salary and partly on a per diem or hourly basis. Regular employment shall not be construed to include employment of less than one hundred days or seven hundred fifty hours in any year. In all cases of doubt the retirement board shall determine whether any person is a State employe as defined in this paragraph, and its decision shall be final."

It is well established that a word or group of words may be given different interpretations in different statutes. The final interpretation depends on the context in which the word is used and, even more significantly, the purpose of the statute. In rejecting the limited definition of regular employment, quoted above, in favor of the more commonly accepted meaning, it should be borne in mind that the Veterans Preference Act of 1957 has two definite purposes. The first and predominant of these is to guarantee reëmployment to persons leaving State positions for duty in the military service. In this respect the act is designed to replace the Act of June 7, 1917, supra. Under this latter act the term "regular employment" had received an interpretation in keeping with the common usage of the words.

The second purpose of the present act is to preserve retirement rights of persons who were called upon to perform military service. In this respect, the present act serves also as an amendment to the State Employes' Retirement Act of July 3, 1941, P. L. 244, secs. 1 and 2, 71 PS §§1756.1 and 1756.2. In this narrow respect only does the present act find a historical basis in the limited legislative interpretation of the words "regular employment".

An exact comparison of the two predecessor acts clearly illustrates that when the legislature wanted to

give the words "regularly employed" a more confined definition, it freely did so. The failure to restrict these words in the Veterans Preference Act of 1957 lends further weight to our conclusion that the more usual and liberal construction must be accepted, and that "regular employe", as used in the Veterans Preference Act, means one whose employment is steady and uniform in recurrence.

Your next inquiry refers to employes who were drafted after July 27, 1953, and who are still serving the term of military service for which they were drafted. Section 8 of the present Veterans Preference Act clearly sets forth that an employe otherwise eligible for military leave of absence shall be granted a military leave commencing on the date of his eligibility regardless of whether such date occurred before or after the enactment of this act. This modifies formal opinion no. 675, dated November 14, 1956. Such leaves will expire 90 days after the expiration of the period for which the employe was drafted.

In view of the clear wording of the statute, the answer to your second inquiry is that an otherwise qualified employe drafted after July of 1953 who is still serving the term of military service for which he was drafted should be granted a military leave of absence as of the date of his eligibility.

Your third inquiry is directed to the status of employes who were subsequently hired to replace persons now eligible for military leave. Basically, the answer to this question depends upon the terms of employment of these new employes. There is nothing in the Veterans Preference Act which purports to alter or change any existing employment rights of the substituting employes hired prior to the passage of the act. There is a presumption against retroactive application of any law: Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 56, 46

PS §556. If the new employes are covered by the provisions of the Civil Service Act of August 5, 1941, P. L. 752, as amended, 71 PS §741, reference to this legislation will serve to answer many of the varying problems that might foreseeably arise.

Particular attention should be directed to art. VIII, sec. 802, of the Civil Service Act of August 5, 1941, P. L. 752, as amended by the Acts of June 1, 1945, P. L. 1366, sec. 1, June 21, 1947, P. L. 835, sec. 1, and September 29, 1951, P. L. 1636, sec. 2. There provisions are made for the furloughing of employes where a reduction of force is necessary. If a veteran's return necessitates transfer of the substituting employe to an existing vacancy, there would, of course, be no problem. If, on the other hand, there is no existing vacancy, a situation would arise calling for a reduction in force. In this instance section 802 could be utilized to solve the problem.

If a substitute employe holds an extra position or is in a probationary status under civil service, reference to pertinent provisions of the Civil Service Act will provide the solution to these problems as they arise.

Further, if a substitute employe is in the unclassified service, and it is impossible to transfer him satisfactorily upon the return of a qualified veteran, resort should be made to existing policy in the department, board or commission employing him.

Any substituting employe hired after the effective date of the Veterans Preference Act should be employed only as a temporary substitute. See section 3 of this act.

In your final question you attempt to ascertain the rate of payment to the retirement fund for hourly and per diem employes who are eligible for and who are granted military leaves of absence. Initially, in an-

swering this question you should bear in mind that some hourly or per diem employes will be eligible for military leave of absence under the interpretation above and yet will not be members of the retirement system because of the narrow legislative interpretation in the Act of June 27, 1923, supra.

Assuming, however, that the person is both entitled to military leave and is a member of the retirement system, the only equitable means of determining his rate of payment would be to take the average payment he had made into the fund over a prior period to be determined by the retirement board. The board should establish a standard period, for example, one year. Then the total contributions of the employe during the year prior to his entry into military service could be divided by 12 to arrive at his average monthly contribution, or by four to determine his average quarterly contribution, etc. When this period is determined a uniform rule will be in effect, and the employe's payments to the fund for the period of his military leave can be made on this basis.

It is, therefore, the opinion of this department and you are accordingly advised that:

1. Persons whose incidents of employment are steady and uniform in recurrence are regular employes within the meaning of the Veterans Preference Act of 1957, even though they are employed on an hourly or per diem basis for less than 750 hours or 100 days per annum.

2. Employes, otherwise qualified, who were drafted after July of 1953 and who are still serving the term of military service for which they were drafted must be granted a military leave of absence as of the date on which they were drafted.

3. The status of employes who were subsequently hired and who are replacing those now entitled to mili-

tary leave of absence depends upon the terms of employment of such subsequently hired persons; and

4. Hourly and per diem employes who are eligible for and who are granted military leaves of absence and who are members of the retirement system may pay into the retirement system an amount determined by an average of their contributions for an established period prior to their entrance in military service.