Rugh *v.* Keystone-Lawrence Transfer and Storage Company, Appellant.

Argued December 11, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Clem R. Kyle*, with him *V. C. Short*, for appellant.

*W. Walter Braham,* for appellee.

OPINION BY FLOOD, J., March 21, 1962:

Judgment was entered in the court below in favor of the claimant for benefits for the death of her husband under the Workmen's Compensation Act. The appellant contends that the decedent, at the time of the accident, was not its employe but was an independent contractor.

The referee found the following facts which were approved by the Workmen's Compensation Board and the court below and are fully sustained by the evidence:

"First: That the defendant, Keystone-Lawrence Transfer & Storage Company, entered into a lease agreement with Fred P. Rugh, under which agreement equipment, consisting of a trailer and tractor, owned by the said Fred P. Rugh, was leased to the defendant.

"Second: That at the time the equipment was leased by Mr. Rugh a written agreement was made between the parties, under which the full control, possession and management of the equipment was to be in the defendant company, for the term of the lease . . .

"Third: That the defendant had the right to designate who would drive the equipment; also, that the defendant had the duty of seeing that the driver was familiar with certain provisions of the Motor Carriers' Safety Regulations, so that there would not be any violation of these Regulations; and defendant also had the duty of seeing that the driver furnished a Certificate of Physical Examination.

"Fourth: That under the terms of the agreement the defendant was to pay the driver for his services and withhold any withholding or Social Security Tax required by the United States Government.

"Sixth: That the defendant instructed Mr. Rugh to drive to Sharon, Penna., where Mr. Rugh was to super-

vise the loading of steel on the equipment and, after the loading was completed, to deliver the steel in Kearney, N. J.

"Seventh: That on July 28, 1955, Mr. Rugh, while operating the leased equipment, on U. S. Route 22, near Harrisburg, Penna., was involved in a collision with another truck, which resulted in injuries to, and later the death of, Mr. Rugh on that date."

Such a lease as that referred to in the first finding of fact above is required by a rule of the Interstate Commerce Commission when equipment is leased. The lease in this case contained the following provisions:

"5. It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier LESSEE and that the LESSEE assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION.

"9. The authorized carrier LESSEE agrees that before any person other than a regular employee of the authorized carrier is assigned to drive the equipment operated under this lease that it will make certain that such driver is familiar with and that his employment as a driver will not result in violation of any provisions of Parts 192, 193, 195 and 196 of the Motor Carriers Safety Regulation (Rev.) pertaining to 'Driving of Motor Vehicles,' 'Parts and Accessories Necessary for Safe Operation,' 'Hours of Service of Drivers,' and 'Inspection and Maintenance,' and will further require such drivers to furnish a certificate of physical examination in accordance with Part 191 of the Motor Carrier Safety Regulations (Rev.) pertaining to 'Qualifications of Drivers' or in lieu thereof a photostatic copy of the original certificate of physical examination, which shall be retained in the authorized carrier LESSEE's file.

"14. . The LESSOR shall surrender full control, possession, and management of said equipment to the LESSEE during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination and the LESSEE shall pay the driver for his services, and shall withhold any withholding or social security tax required by the U. S. government."

It will be seen from this that Fred Rugh, the decedent, who owned the truck, either individually or in partnership, gave complete control over the equipment, its operation and its use to the appellant during the term of the lease. In addition to taking complete control of the use of the equipment, by Paragraph 14 the appellant undertook to pay the driver and to withhold any withholding or social security tax required by the United States Government. When Rugh undertook to drive his truck to Sharon, supervise its loading there and drive and deliver it to Kearney, New Jersey, at appellant's direction, he became the appellant's employe. *Diehl v. Keystone Alloys Co.*, 398 Pa. 56, 156 A. 2d 818 (1959).

Despite this clear inference, the appellant contends that we should hold that the decedent was an independent contractor and not appellant's employe when he was killed. But the important factor in determining this question is right of control over the conduct of the other in the performance of his work, and none of the factors relied upon by the appellant negative, the clear meaning of the language of the lease, giving the appellant the right to control the driver's conduct during the term of the lease.

1. The appellant points out that Rugh was not on its payroll and was to be paid a flat rate for the job based on a percentage of the load; out of which sum the driver and all gas; oil; service, storage and maintenance were to be paid. But the fact that wages are not paid is not determinative if the appellant has the right of

control. *Fanning v. Apawana Golf Club,* 169 Pa. Superior Ct. 180, 82 A. 2d 584 (1951); and see: *Bogan v. Smoothway Construction Co.,* 183 Pa. Superior Ct. 170, 178, 130 A. 2d 207, 211 (1957).

2. The appellant contends that it could not hire or fire the decedent or any of his drivers, nor designate who was to drive the truck and in no way had the right to control the manner and means by which the job was to be accomplished. But Paragraph 9 of the lease makes it clear that it did have the right to select the driver or reject any driver whom Rugh might propose to make this trip. This is also implied from Paragraphs 5 and 14 giving it full control over the use of the equipment. Furthermore, appellant's vice-president admitted that under the lease appellant had the right "to put a driver on that [Rugh's] truck . . . if we so desired". As we have said above the appellant's full control of the management and use of the equipment and its right, not only to choose, but to train, the driver if necessary, clearly gave it the right to control the manner and method of doing the work.

3. The appellant relies heavily upon the fact that it did not exercise actual control. It suggests that Rugh, without interference by it, decided what route to travel, the hours of the day or night he would drive and when the load would be picked up or delivered. But whether or not the defendant attempted to actually control Rugh's conduct in respect to these matters, its right to control them under the lease is clear. Where the right to exercise complete control exists, the employer-employe relationship is not defeated by the fact that control was not actually exercised. *Mitchell v. East Nantmeal Township,* 181 Pa. Superior Ct. 482, 124 A. 2d 150 (1956); *Eggelton v. Leete,* 186 Pa. Superior Ct. 542, 142 A. 2d 777 (1958).

Moreover, there was at least one point at which the exercise of actual control by the appellant was provid-

ed for. On this point, we can do no better than to quote from Judge POWERS' able opinion in the court below: "Lessor surrendered full control, possession and management of the equipment to the Defendant Lessee, during the term of the lease which began with delivery of the equipment and ended upon Rugh's return to New Castle empty . . .

"Here is a matter of great importance. The form which the parties used provides for a term beginning with delivery of the equipment and ending with 'delivery of cargo at destination'. This would seem to support Defendant's theory that Rugh was merely an independent contractor. Defendant was interested only in obtaining delivery of the steel and cared for nothing beyond the end result. But the agreement was not filled out that way. Paragraph 2, filled in with the typewriter, makes the agreement end upon 'completion of unloading and return to New Castle, Pa. empty.' In other words, Rugh was not a free agent. He could not accept a return cargo, however profitable, unless perhaps his employer, the Defendant, consented but had to roll home those weary miles empty. It is important that Rugh had to come home empty: Gallagher Estate v. Battle, 122 A. 2d 93 (Md. 1956)."

4. The appellant also points to the normal business operations of decedent's partnership. This partnership operated as an independent contractor hauling goods for various companies, choosing for whom it would haul and what loads it would haul. But this has no determinative effect upon the question whether the decedent, when he undertook to drive his truck for the appellant, under a contract which gave appellant the right to control his activity during that trip, became for that trip, the appellant's employe. This was clearly decided in *Diehl v. Keystone Alloys Co.*, supra.

5. The appellant, apparently recognizing the difficulty it faces in the language of the lease agreement,

attempts to show that the lease does not govern the rights and relationship of the parties upon the theory that this was not its purpose.

The appellant contends that the lease agreement was executed solely to satisfy Interstate Commerce Commission Administrative Rule No. 4, which provides, "The lease or other arrangements under which the carrier utilizes in its operations a vehicle which it does not own, whether or not including the services of an owner-driver or his representative, must be of such a character that the carrier will have the right to direct and control the operation of the vehicle at all times and be fully responsible therefor in all respects under all applicable provisions of law governing the duties and obligations of the carrier to the shipper and to the public generally."

The appellant contends that the purpose of these regulations and of the lease executed thereunder was solely to benefit the shipper and the public generally, and that it determines only the rights of such persons against the carrier and is in no way controlling upon the relationship of the parties in this case.

Of this argument it is sufficient to say that, while the expressed purpose of the regulation or the lease might determine the meaning of an ambiguous clause in the lease, we have no ambiguity here.

6. The appellant argues that neither Congress nor a Federal Commission has the power to enact legislation determining the relationship between the parties to a contract as regards problems arising between themselves. If this broad proposition is meant to suggest that Congress cannot control the relationship of the parties with regard to Workmen's Compensation benefits, the answer is that if legislation for the benefit of the public generally results in an employer-employe relationship under applicable state law, the normal results flowing from the relationship under state

law are not aborted because of any lack of congressional power.

Even though the public policy sought to be implemented by Congress might have been the establishment of responsibility upon the part of the carrier for injuries resulting from the negligence of the driver, if the method chosen to establish that responsibility created an employer-employe relationship, that relationship thereupon exists for other purposes as well.

Counsel for the appellee suggests that the public policy of the Interstate Commerce Commission is broader than the appellant claims and has also for one of its objects the protection of small truckers from exploitation. But even if the policy is no broader than the appellant claims, the employer-employe relationship follows from the way in which that policy was implemented in this case.

7. The cases upon which the appellant relies are distinguishable.

In *War Emergency Co-op. Ass'n v. Widenhouse*, 169 F. 2d 403 (C.A. 4, 1948), the appellant, a truck owner, entered into a contract with the association, a carrier licensed by the Interstate Commerce Commission to carry gasoline. His truck was damaged in an explosion caused by the negligence of the driver employed by him to operate the vehicle under lease to the association. He sued the association to recover for the damage to his property. While the court, in denying recovery to Widenhouse, denominated him an "independent contractor" and stated that the contract provision giving the lessee control over the management and use of the vehicle "cannot affect the question of liability" because "it was not observed", the court recognized that there was some question whether Widenhouse properly could be described as an independent contractor in view of the fact that "the business in which he was engaged was his own business and de-

fendant was little more than an agent for him and the truckers associated with him". The defendant association had been incorporated by Widenhouse and other truckers in order, among other things, to create an entity having an Interstate Commerce Commission license to transport gasoline in interstate commerce which the members could use by executing leases of their equipment to the association.

The court based its actual decision upon findings that the driver was employed and paid by Widenhouse, that the latter had complete control over what duties the driver was to perform and how he should perform them, that Widenhouse was not an employe of the defendant, and that in operating the trucks neither he, nor his drivers, were subject to the association's direction. The decision was based chiefly upon the ground that a person ordinarily may not recover on account of his own wrong and the association was not liable to Widenhouse because the damage resulted from the negligence of the latter's own employe for which he was responsible. The court held, in effect, that the written lease here was only window-dressing and did not represent the true agreement of the parties. It observed that the rule is for the protection of shippers and not one like Widenhouse who joins with the defendant in an operation in violation of the rule.

Obviously, we have here a different case. If Rugh's partner were suing for the damage to the truck we might have a different result as to the appellant's liability. Certainly it would depend upon different principles. The fact that control was actually exercised by the owner of the truck and general employer of the driver might be a matter of such importance in determining that question as to override the right to control given under the contract. We are not deciding that question here.

*Stroud v. Zuzich*, 271 S.W. 2d 549 (S. Ct. Mo., 1954) and *Gibson v. Moore Motor Freight Lines*, 246 Minn. 359, 75 N.W. 2d 212 (1956), were decided under the local law of the respective jurisdictions in which they arose and do not necessarily reflect principles concerning the determination of the employer-employe relationship which are applicable in Pennsylvania. Furthermore, in the *Stroud* case there was no provision in the contract requiring the "motor carrier" to pay the driver for his services and withhold any withholding or social security tax. The court based its decision, in part, upon findings that the "contract hauler" paid the driver his wages, after deducting the social security and income tax withholdings, and testimony by the general manager of the "motor carrier" that his company "had no control over who the driver would be. We could neither hire or fire the man . . . whatever driver they would have on that unit is the one we would have to take". Further, in the *Gibson* case the lease agreement provided that the "lessor . . . shall furnish the driver, and shall pay the driver for his services, and shall withhold any withholding or social security tax required by the U. S. government." The court held that this paragraph of the lease brought the case under the rule of *Turner v. Schumacher Motor Express, Inc.*, 230 Minn. 172, 41 N.W. 2d 182 (1950), where the court, relying upon a provision in the lease that the lessor would "furnish one or more competent drivers", an admission that the lessor had the right to substitute another competent driver for the decedent at any time, and the fact that the right to discharge the deceased driver belonged to the lessor alone, held that the deceased driver was the employe of the lessor.

Finally, *Gearhart v. Summit Fast Freight, Inc.*, 167 Pa. Superior Ct. 481, 75 A. 2d 606 (1950), is distinguishable in that there "[t]he hiring of additional help was a matter of personal discretion with him [the

deceased truck owner], the contract providing that he might have his truck operated 'by himself or by competent employes', and he agreed to pay wages, and charges incident to coverage of workmen's compensation, unemployment compensation and other social security benefits for assistants hired, and such other charges as were involved in his work." Moreover, the contract itself stated: "The relationship herein created is that of independent contractor and not that of employer and employee".

To summarize, the agreement gave the appellant such right to control the decedent's activities during the term of the lease as to create an employer-employe relationship at the time of his death. To adopt the appellant's position that the lease must be limited by the expressed purpose of the Interstate Commerce Commission Rule so as not to create such a relation despite its clear language doing so, would be to risk frustrating one of the main objects of that rule—the protection of the public—under the pretence of carrying out its purpose, or placing a limitation on its purposes for which the language of the rule gives no warrant. In a long line of cases going back at least to *Knisely v. Knisely,* 120 Pa. Superior Ct. 140, 182 A. 51 (1935), and extending to *Diehl v. Keystone Alloys Co.,* supra, both our appellate courts have stated that neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment where a reasonable view of the evidence warrants a finding of employment. Certainly, we cannot find it here.

Order affirmed.