## Stine v. Borst, Appellant.

Argued November 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William W. Knox,* with him *M. Fletcher Gornall, Jr.,* and *Magenau and Gornall,* and *Knox, Weber, Pearson and McLaughlin,* and *Bozic and Bozic,* for appellant.

*R. Charles Thomas,* with him *F. Joseph Thomas,* for appellee.

*Howard N. Plate,* with him *Quinn, Leemhuis, Plate and Busek,* and *Shafer, Shafer & Dornhaffer,* for appellee.

OPINION BY ERVIN, J., December 16, 1964:

Kenneth L. Stine, husband of the claimant in this Workmen's Compensation case, was killed on June 12, 1959 while driving a tractor-trailer unit owned by the defendant, Raymond Borst, and leased to the defendant, Pyramid Industries, Inc. (Pyramid), as a result of an accident which occurred near Monroeville, Ohio, when Stine ran off the road and struck a tree. No other vehicle was involved in the accident.

The sole question in this case is—whose employe was Stine at the time of the accident? The referee found that Stine was the employe of Borst and absolved Pyramid from liability for compensation. The Work-

men's Compensation Board affirmed the findings of fact and conclusions of law of the referee. The court below affirmed the board. Borst has taken the present appeal.

The facts as found by the referee and affirmed by the board are as follows: "Raymond Borst, a defendant, was the owner of several tractors and trailers, and had entered into a leasing agreement with Pyramid Industries, Inc., the other defendant, to lease two semi-trailers and three tractors to Pyramid. Pyramid was to pay for the equipment on a mileage basis. The lease also provided that the operation of the equipment was to be by carefully selected drivers, 'which drivers shall be conclusively presumed to be agents of the company only.' Further, it stipulated that the company was to be solely responsible for damage to the leased equipment resulting from gross negligence on its part or on the part of its agent.

"Kenneth Stine, the decedent, had been driving trucks for Raymond Borst for some years. He was also one of the drivers of the equipment leased to Pyramid Industries, and was carried on the payroll of that company. He had not been hired by that company, but was paid on a trip basis and his earnings were subjected to the usual deductions for income and other taxes.

"On June 8, 1959, Pyramid Industries called Borst and requested a unit to deliver a load to Boston. Stine was assigned to the job. He made delivery of the cargo to Boston, and then arranged to carry, for hire, a load of wool from Lawrence, Mass. to St. Mary's, Ohio. A lease agreement covering the shipment was signed, purporting to be between Pyramid Industries and Raymond Borst, as lessors, and Arnel Trading Co., as lessee. The lease was executed by Stine as agent for Borst. . . . Before leaving Boston Mr. Stine received two checks in full payment for the trip: one

in the sum of $75.00 was payable to Stine, the other for $175.00 was made payable to Borst."

Stine returned to Erie with the load of wool which he was to haul to St. Mary's, Ohio, and parked the tractor-trailer unit at the office of Borst at 4:30 p.m. on June 12, 1959. He went home for a few hours in his own car and then returned to the Borst place of business some time between 9:00 and 9:30 the same evening, where he had a conversation with Borst. At this time, Stine handed Borst the $175.00 check issued by Arnel Trading Company (Arnel) and Borst in turn gave him $22.00 for his additional expenses in returning from Boston. After the fatal accident, Borst called Arnel and got them to issue a new check for $175.00 payable to Raymond Borst and Pyramid Industries. The new check was issued and payment stopped on the original one. Mr. Lindquist, treasurer of Pyramid, testified that Pyramid never received any part of the $175.00 check and, in fact he did not know that there was such a check in existence until many months after the fatal accident. Lindquist also testified that Pyramid never received any payment for return trips of the tractor-trailers for carrying materials for other persons or corporations.

The officers of Pyramid had no knowledge of the execution of the lease to Arnel and never authorized it. Before the lease to Arnel was executed there was a telephone conversation between Mr. Arthur, one of the partners of Arnel, and Borst. The fact of the conversation is in evidence but its content could not be considered because of the rule prohibiting hearsay evidence. At the time of the fatal accident in Ohio, placards were on the side of the tractor containing the words "Arnel Trading Company" and these placards completely covered the words "Pyramid Industries."

Mr. Robert Lindquist, treasurer of Pyramid, testified as follows: "A. We never had any knowledge of

any loads coming back that were not for us; however, we had had a conversation with Mr. Borst on the aspect of bringing loads back, if he could get them; in other words, he said occasionally he might be able to pick up and bring a load back, so we had a full verbal agreement that if such did happen that he would cover any information on the truck—any information pertaining to Pyramid Industries on the truck, and that all responsibility as to Pyramid Industries would cease at the point of delivery of our material to its destination; whether he ever used that I don't know. . . . A. We knew nothing about any return loads—they were his own loads. Q. By 'his own loads' do you mean Mr. Borst or Mr. Stine? A. Mr. Borst; it was his truck. Q. He would have supervision over it—other than your own loads? A. Right. Q. And other than your own shipments, you knew nothing about what they did with these tractor-trailer units? A. Right."

After Borst received word of the fatal accident in Ohio, he went to the scene of the accident and saw that the trailer was not destroyed and its cargo not injured and he made arrangements to have the load delivered by another one of his trucks to the St. Mary's Woolen Manufacturing Company in Ohio. Also, shortly after the accident, Borst put the business of leasing tractor-trailer units into the name of his daughter, Pat Fratus, and on June 24, 1959 a new lease was entered into between Pyramid and Pat Fratus.

Counsel for Borst first argues that Stine should have been held to be an employe of Pyramid. Their argument is supported by the lease between Borst and Pyramid that "The company shall operate said leased equipment with carefully selected licensed drivers, which drivers shall be conclusively presumed to be agents of the company only." It is also a fact that Stine was on Pyramid's payroll and that his earnings were subjected to the usual deductions for income and

other taxes by Pyramid. If the fatal accident had occurred on the trip from Erie to Boston, when Pyramid's pipe was being transported from Erie to its warehouse in Boston, we would have no difficulty in find-that Pyramid was the employer. The relationship changed, however, after the delivery of the pipe in Boston. Then, without the knowledge of Pyramid, arrangements were made to haul the load of wool from Boston to St. Mary's, Ohio, for the Arnel Trading Company. It is, nonetheless, argued by counsel for the appellant that by reason of the terms of the lease between Borst and Pyramid, Stine should have been conclusively presumed to be an agent of Pyramid only and that it must be held as a matter of law that he was Pyramid's agent at the time of the fatal accident. Great reliance is placed upon the case of *Rugh v. Keystone-Lawrence Transfer & Storage Co.*, 197 Pa. Superior Ct. 526, 179 A. 2d 242, where it was held that a leasing agreement giving the defendant the right to control the activities of the decedent driver during the term of the lease, created an employer-employe relationship at the time of the decedent's death but in that case the referee and the board both found that the decedent was an employe of the defendant at the time of his death. The driver could not accept a return cargo but had to return empty. It is true that in that case we said: "Where the right to exercise complete control exists, the employer-employe relationship is not defeated by the fact that control was not actually exercised."

In the present case, however, Mr. Lindquist, treasurer for Pyramid, testified concerning the oral agreement with Borst to the effect that when a driver secured a return load for some other shipper, the responsibility of Pyramid ceased—hence the right to control would also cease. True it is that Borst denied that any such agreement was ever made. This, however, presented a question of credibility for the fact finder,

which, in this case, was the board, and the board found against Borst and in favor of Pyramid. This finding was binding upon the court below and is also binding upon us: *Paulin v. Williams & Co.*, 327 Pa. 579, 583, 195 A. 40; *Krchmar v. Oakland Beach Co.*, 155 Pa. Superior Ct. 430, 433, 38 A. 2d 710.

In the present case there was ample evidence to justify the finding made by the board that at the time of his death, Stine was an employe of Borst and not of Pyramid. The presumption arising from the provision of the lease between Borst and Pyramid to the effect that the driver shall conclusively be presumed to be the agent of Pyramid, cannot stand in the face of the evidence in this case that at the time of the fatal accident Stine was not an employe of Pyramid. A presumption "of law" is merely to invoke a rule of law compelling the fact finder to reach the conclusion in the absence of evidence to the contrary: *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 500, 173 A. 644. To the same effect see 20 Am. Jur., Evidence, §160; Sum. Pa. Jur., Evidence, §389; *Waters v. New Amsterdam Casualty Co.*, 393 Pa. 247, 251, 144 A. 2d 354.

Counsel for appellant also argues that the court below overlooked the exception "to the principle relative to shifting presumptions, namely, that it does not apply where it is clearly unattacked documentary evidence, as it is in the case at bar." *Hartig v. American Ice Co.*, 290 Pa. 21, 31, 137 A. 867. Counsel, however, did not give the complete quotation from the *Hartig* case. It is as follows: "Another instance where a case otherwise for the jury may be ruled as a matter of law in favor of defendant is (c) where, in addition to the uncontradicted oral evidence on the side of defendant, showing no liability, there is admittedly genuine or unattacked documentary evidence which relieves defendant from the possibility of liability (for an instance of this kind see Walters v. American Bridge

Co., 234 Pa. 7, 10). . . ." The *Walters* case was one wherein Walters sought damages for personal injuries sustained while crossing a county bridge which the American Bridge Co. had contracted to repair. American Bridge Co. had sublet the work at the point at which the plaintiff was injured. The uncontradicted parol proof showed that the independent contractor was doing the work at the time of the accident and that the defendant had no part in it. The court in that case held that it was immaterial that there was an agreement between the county and the defendant that the contract was not to be sublet. In the present case, the testimony that Stine was an employe of Pyramid at the time of his accident was not uncontradicted. On the contrary, Lindquist, treasurer of Pyramid, testified as to the oral agreement between Pyramid and Borst concerning return loads for shippers other than Pyramid and he testified that, in such case, the responsibility of Pyramid terminated. We are, therefore, of the opinion that this evidence was for the consideration of the fact finder and that the board had the power to determine that the evidence showing Stine to be an employe of Borst at the time of his death had greater weight than the presumption arising out of the contract between Borst and Pyramid. Actually, there could be little doubt that Stine was subject to the control of Borst rather than Pyramid at the time of the happening of the fatal accident. Borst was the owner of the equipment being driven by Stine at the time of the accident. He was one of Borst's regular employes although he was carried on Pyramid's payroll. He was not paid by the hour by Pyramid but his wages or commissions were set at 30% of the total sum paid under the lease agreement for each trip, the remaining 70% going to Borst. Also, there was the agreement between Pyramid and Borst that on return trips for some other company, the responsibility of

Pyramid would cease at the point of delivery of its materials. The check for $175.00 given by Arnel for the cost of transportation of the return load was never turned over to Pyramid but was retained by Borst. It seems quite clear to us that if the fatal accident had never occurred, Pyramid would never have heard of the $175.00 payment for the return trip. All of these facts point to the existence of a master-servant relationship between Borst and Stine in spite of the presumption in the lease that Stine was an employe of Pyramid.

Counsel for appellant argues that in the event it should be determined that Stine was not the employe of Pyramid, it should then be found that Stine was an employe of Arnel. Counsel bases his argument upon the provisions of the lease between Borst and Pyramid, as lessors, and Arnel as lessee, wherein it is provided that the equipment "is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the Interstate Commerce Commission."

The court below gave little weight to the presumption arising out of the Arnel lease because the I.C.C. regulations prohibited any such lease that was for less than thirty days. The Arnel lease provided that it should begin on June 10, 1959 at 10 a.m. and end on June 13, 1959, at 6 p.m. The lease was illegal on its face and could not be binding upon Stine. Furthermore, Stine might have been an employe of both Arnel and Borst at the time of his death. Where it is not entirely clear who was the controlling master of the borrowed employe, and different inferences in that regard can fairly be drawn from the evidence, it is for the fact finder to determine the question of agency. Under some circumstances both the lender and the borrower may have control over the servant so as to

render each of them liable for his conduct. Whether the power of control was sole or joint is to be determined by the fact finder under all the evidence. See *Kissell v. Motor Age Transit Lines*, 357 Pa. 204, 53 A. 2d 593.

We are advised that the claimant in this case has instituted proceedings before the workmen's compensation authorities in Massachusetts. The Pennsylvania authorities would have no power to enter an award against Arnel, but the Pennsylvania authorities do have the power to declare that Stine was an employe of Borst even though he might be found by the Massachusetts authorities to also be an employe of Arnel.

We do not have any evidence in this case to show that Arnel actually exercised any control over Stine. The evidence indicates that whatever control was exercised over Stine for the Ohio portion of the trip was exercised by Borst. When Stine returned to Erie from Boston, he went to the Borst place of business and left the tractor-trailer while he took some rest. When he returned, he did see Borst and turned over to him the two checks, one in the amount of $75.00 and the other in the amount of $175.00, which had been given to him by Arnel. We do not know from the standpoint of Stine what conversation took place between Stine and Borst at this time because of his death. It is clear, however, that he proceeded to drive the tractor-trailer to Ohio after his contact with Borst. It is also true that when the accident occurred in Ohio, Borst went there and took care of seeing that the trailer with its wool was delivered to its final destination in St. Mary's Ohio. He furnished another tractor and driver to accomplish this. This strongly indicates that he had control of the situation at that point. There is no evidence that Pyramid ever received any benefit from the return trip and, on the contrary, the evidence indicates that Borst was receiving the monetary benefit from the

return trip. While we are not deciding that Arnel could not also be an employer of Stine at the time of the accident, we do think that the evidence is sufficiently clear that Borst, if he was not the sole employer of Stine at that time, was also a joint employer of Stine. In this connection what Chief Justice HORACE STERN said in *Mature v. Angelo,* 373 Pa. 593, 596, 97 A. 2d 59, is applicable: "Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work,* the servant remains in the service of his original employer: . . . ."

It is also argued on behalf of the appellant that the presumption arising from the words "Arnel Trading," which appeared upon the side of the tractor at the time of the accident, should make Arnel the employer. The other evidence, however, which has already been referred to and which indicated that Borst was actually in control of the situation at the time of the accident, would be sufficient in our opinion to require the submission of the question to the fact finder. The fact finder, the board in this case, found that Borst was the employer and that is controlling upon the court below and is also controlling upon us.

The principle, as illustrated in the cases of *Rau v. Wilkes-Barre & Eastern R.R. Co.,* 311 Pa. 510, 513, 167 A. 230, and *Morgan v. Heinel Motors, Inc.,* 329 Pa. 360, 364, 197 A. 920, that if specified conduct, in one view, may be construed to be lawful and in another, to be unlawful, the lawful construction should be adopted, is not applicable to the present case. Pyramid, so far as we can determine from the record, was

58

not a carrier certificated by the I.C.C. to engage in interstate commerce for others. It was only permitted to transport its own products. It would, therefore, have been unlawful for Pyramid to enter into an engagement to transport wool for some other company from Massachusetts to Ohio. The Arnel lease, as has heretofore been pointed out, was also illegal because it violated the I.C.C. regulation which required the lease of equipment to be for a period of not less than thirty days, when it was being operated for the authorized carrier by the owner or employe of the owner.

*Diehl v. Keystone Alloys Co.,* 398 Pa. 56, 156 A. 2d 818, is not in point because in that case the owner driver was actually transporting merchandise for the lessee at the time of the accident. *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F. 2d 473 (C.A. 3rd), is not in point because in that case the lessee profited by the cutting of costs resulting from the back hauls, whereas in the present case there is no evidence of such result.

Order affirmed.