Walton *v.* Harold M. Kelly, Inc. and B & P
Motor Express, Inc.

Argued June 6, 1972, before Judges CRUMLISH, JR.,
KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.
President Judge BOWMAN did not participate.

*Donn I. Cohen,* with him *Robert J. Stewart* and
*Liverant, Senft and Cohen,* for appellant.

*Norman T. Petow,* for appellee, Walton.

*Robert J. Brown,* with him *Kain, Brown & Roberts,* for appellee, B & P Motor Express, Inc.

OPINION BY JUDGE CRUMLISH, JR., August 1, 1972:

In this appeal from a decision and order of the Workmen's Compensation Board of Review, we are called upon to determine the true employer-employee relationship between Lester Walton and the two named defendants. Each named defendant contends that, for the purposes of workmen's compensation, the other was the employer of Walton.

Walton, a resident of Pennsylvania, was employed by Harold M. Kelly, Inc., as a tractor-trailer operator. On April 8, 1965, Walton, on behalf of Kelly, Inc., entered into an agreement with B & P Motor Express in Baltimore, Maryland, which constituted a lease by Kelly (Lessor) to B & P (Lessee) of the equipment operated by Walton to ship property from Baltimore to Cleveland, Ohio. Under the agreement, Walton picked up a load of steel coils in Dundalk, Maryland, received a bill of lading from the B & P office, and proceeded on the trip which was to terminate at Cleveland. Walton passed through Pennsylvania stopping at a Kelly terminal to refuel and later while traveling in Ohio, lost control of the vehicle and the resultant accident took his life.

The lease provided, among other things, that "[s]econd party (Kelly) does hereby lease to first party (B & P Motor) the above described motor vehicle. The said equipment shall, during the term of this lease, be deemed to be under the exclusive possession, control and use of the lessee (B & P Motor) except that lessee (B & P Motor) reserves the right to sub-lease said equipment. Lessor (Kelly) shall not use said equip-

ment for his own use or benefit during the terms of this lease."

The widow of the driver filed a death claim against each of the companies.[1] The Workmen's Compensation Board of Review initially found that an employer-employee relationship existed between the decedent and B & P Motor Express. This decision was reversed by the Court of Common Pleas of Adams County. That court determined that Kelly was the employer and remanded the case to the Board for further consideration consistent with the court's holding. That decision and order of the Adams County Court of Common Pleas was affirmed by the Pennsylvania Superior Court in *Walton v. H. M. Kelly, Inc.*, 218 Pa. Superior Ct. 28, 269 A. 2d 347 (1970). On remand, the Workmen's Compensation Board issued an order declaring Kelly to be the employer. From that decision, Kelly has appealed to this Court contending, *inter alia*, (1) that there was no actual reconsideration of the case and that the Board simply issued an order holding Kelly as the employer; and (2) that upon remand, the provisions of the Interstate Commerce Act[2] relating to equipment lease arrangements should have been considered, and that had these provisions been considered B & P would clearly have been held to be the employer. Our function in this appeal is to determine whether the provisions of the Interstate Commerce Act mandate a different result. Since we are of the opinion that they do not apply, we hold that the court below, even though it did not consider their applicability, did not commit an error of law by failing to apply the federal provisions.

Section 304(e) of the Interstate Commerce Act empowers the Interstate Commerce Commission to enact

---

[1] The claimant filed two separate fatal claim petitions which were consolidated for purposes of the hearings.

[2] Part II of the Interstate Commerce Act as added Aug. 9, 1935, c. 498, 49 Stat. 543 as amended, 49 U.S.C. §§301, et seq.

regulations governing the lease and interchange of vehicles by motor carriers. In accordance with this authority the Commission has adopted regulations, contained in 49 CFR §1057.4 which provide that in such arrangements

". . . the lessee shall have the exclusive possession, control and use of the equipment and shall completely assume responsibility in respect thereto during the term of the lease. (§1057.4(a)(4))."

"That it is the duty of the lessee before taking possession to properly inspect the equipment to make certain that it meets all the requirements of the Interstate Commerce Act. (§1057.4(c))."

"That during the term of the lease the equipment shall be identified as required to show that the lessee is the operating carrier, and that the equipment shall bear a sign showing the lessee's serial number and name. (§1057.4(d))."

"That the lessee shall make certain that the operator of the leased vehicle conforms to and complies with ICC Regulations. (§1057.4(e))."

"That the traffic transported must move on bills of lading issued by the lessee which must clearly indicate that the authorized carrier-lessee is responsible for the transportation of the property being carried. (§1057.4 (f))."

Appellant also proffers for our consideration Ruling Number 4 of the Motor Carriers Federal Administrative Rulings which provides that "[t]he lease or other arrangement by which the equipment of an authorized operator is augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by per-

sons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master." 2 CCH Federal Carrier Reporter, Par. 25,004. Appellant contends that the stated regulations and ruling taken together lead inevitably to the conclusion that under the present arrangement B & P was the employer.

Appellant argues that the ICC regulations and the provisions of the Act itself are determinative of the issue of employer-employee relationship and that these regulations are applicable for workmen's compensation purposes.

The ICC regulations and the provisions of the Act itself do not compel the conclusion that B & P was the employer in this case.[3] In *War Emergency Co-Op Association v. Widenhouse*, 169 F. 2d 403 (4th Cir. 1948), the lessor of equipment under an arrangement similar to the one in the instant case tried to avoid liability by arguing that the ICC regulations made the lessee the employer of the driver. The court said: "It is argued that the driver of the truck should be held the employee of the defendant [lessee] and not of Widenhouse [lessor] because the rules of the Interstate Commerce Commission require that leased vehicles be operated by employees of the licensed operator, because the written contract between Widenhouse and defendant provides that defendant [lessee] shall direct, control and manage the use of the truck and because liability insurance was

---

[3] Appellant in advancing Administrative Rule 4, *supra*, fails to mention that that ruling, as stated, is no longer followed. In *Lease and Interchange of Vehicles by Motor Carriers*, Interstate Commerce Commission Reports, 52 M.C.C. 675, 680 (1951), the Commission stated that "The requirements of that rule [No. 4], applied as stated, in some of our earlier decisions, no longer prevail." We think that, even considering the provisions of Rule No. 4 the ICC regulations do not compel a result different from that reached by the Superior Court.

carried by the defendant. None of these things, however, nor all of them taken together, furnish any reason for ignoring the true relationship existing between the parties or for allowing Widenhouse [lessor] to recover from defendant for damage caused by the negligence of his own employee. The rule of the Commission relied on is for the protection of shippers and others affected by the operation of trucks under the license, not for the protection of those who engage with the licensee in such operations in violation of the rule. As for the contract provision, it was not observed, and manifestly cannot affect the question of liability, which is to be determined by the real relationship of the parties." **169 F. Supp. at 407.** We believe that the decision of that court was proper and the reasoning is directly applicable to the instant situation.

*Carriers Insurance Exchange v. Truck Insurance Exchange,* 310 F. 2d 653 (4th Cir. 1962), involved a lease of equipment agreement in which the parties in the contract provisions, technically complied with the ICC regulations but in practice the lessor maintained control over the operation of the equipment. The court there held that despite the ICC Regulations the lessor could not shift total responsibility for the negligence of the driver of the equipment to the lessee even though the lease called for control by the lessee. It was the actual practice and not merely the written word that controls.

In *Vance Trucking Co. v. Canal Insurance Co.,* 249 F. Supp. 33 (D.S.C. 1966), the court considered the question of whether the ICC Regulations in and of themselves, impose total liability upon a lessee of equipment because of his relationship of employer of the driver of the leased equipment. The court held that if, in fact, control was also exercised by the lessor, the ICC Regulations could not absolve the lessor of this liability. *See also, Beany v. Arpin Van Lines Co.,* 98 R.I. 193, 200 A. 2d 592 (1964) ; *Gibson v. Moore Motor*

*Freight Lines, Inc.,* 246 Minn. 359, 75 N.W. 212 (1956), both of which involve an issue identical to the one before us and both conclude that the ICC Regulations alone do not determine the employer-employee relationship. We realize that these cases are not binding upon us but we do hold that they are supportive of our conclusion that the ICC Regulations do not compel a different result than that which was reached by the Superior Court. Appellant, in support of this contention that ICC Regulations are controlling, directs us to *Rugh v. Keystone-Lawrence Transfer and Storage Company,* 197 Pa. Superior Ct. 526, 179 A. 2d 242 (1962). In *Rugh,* the Superior Court stated: "The appellant argues that neither Congress nor a Federal Commission has the power to enact legislation determining the relationship between the parties to a contract regarding problems arising between themselves. If this broad proposition is meant to suggest that Congress cannot control the relationship of the parties with regard to workmen's compensation benefits, the answer is that if legislation for the benefit of the public generally results in an employer-employee relationship under applicable state law, the normal results flowing from such relationship under state law are not aborted because of any lack of congressional power.

"Even though the public policy sought to be implemented by Congress might have been the establishment of responsibility upon the part of the carrier for injuries resulting from the negligence of the driver, if the method chosen to establish that responsibility created an employer-employee relationship, that relationship thereupon exists for other purposes as well." 197 Pa. Superior Ct. at 533-34, 179 A. 2d at 246. The Court there held that under the existing lease and considering the factual setting, full control over the operator and the operation of leased equipment had been placed in

the lessee and therefore an employer-employee relationship existed for workmen's compensation purposes.

The Court there observed that the main purpose of the Interstate Commerce Act and regulations was the protection of the public and determined that the policy of the Act would best be served by holding that the relationship there was not one in which an independent contractor retained this status as such but was in fact an employer-employee relationship. The Court in *Rugh* decided the case on the basis of *actual control,* observing that under a different factual setting, different principles might apply. Indeed, Judge FLOOD actually supplied language which distinguishes *Rugh* from the instant case. Speaking generally about a situation in which equipment was leased and actual control maintained by the lessor despite lease provisions to the contrary, Judge FLOOD stated: "The fact that control was actually exercised by the owner of the truck and the general employer of the driver might be a matter of such importance in determining that question [of the lessee's liability] as to override the right to control given under the contract." 197 Pa. Superior Ct. at 535.[4] This is precisely the question here.

We have determined that the ICC Regulations and the Act itself do not compel a different result from that which was reached by the Superior Court. Furthermore, we are of the opinion that the remaining issues raised by appellant have been competently resolved by the Superior Court in *Walton, supra,* with which we are in accord. *Walton* is not a stranger to this Court. We have cited *Walton* with approval in *Miller Co., et al. v. Samuel E. Minter,* 2 Pa. Commonwealth Ct. 229, 277 A. 2d 867 (1971), and it has similarly been approved by the Pennsylvania Supreme Court in *Hamler v. Waldron,* 445 Pa. 262,     A. 2d     (1971).

---

[4] In *Rugh*, Judge FLOOD explicitly stated that this question was not before the Court.

244

Accordingly, we issue the following

**ORDER**

AND NOW, this 1st day of August, 1972, the decision and order of the Workmen's Compensation Board dated July 22, 1971 is hereby affirmed.